1  Emily C. Mimnaugh (NV Bar #15287)
   PACIFIC JUSTICE INSTITUTE, Nevada Office
2  1580 Grand Point Way #33171
   Reno, NV 89533
3  Telephone: (916) 857-6900
   Fax: (916) 857-6902
4  emimnaugh@pji.org
   *Designated Resident Nevada Counsel for Moving Defendants*
5  James Bopp, Jr. (IN Bar #2838-84)*
        jboppjr@aol.com
6  Richard E. Coleson (IN Bar #11527-70)*
        rcoleson@bopplaw.com
7  Joseph D. Maughon (VA Bar #87799)*
        jmaughon@bopplaw.com
8  THE BOPP LAW FIRM, PC
   1 South Sixth St.
9  Terre Haute, IN 47807-3510
   Telephone: (812) 232-2434
10 *Pro hac vice counsel will comply with LR IA 11-2 within 14 days.*
11 *Counsel for Moving Defendants*

12             **UNITED STATES DISTRICT COURT**
                  **DISTRICT OF NEVADA**
13

14 Eugene Glick, M.D., and Planned Parenthood of Wash-
   oe County, a non-profit Nevada Corporation,
15                                      Plaintiffs,

16     v.                                              Case No. **3:85-cv-00331**

17 Aaron D. Ford, Nevada Attorney Gen.; Christopher J.
   Hicks, Washoe County Dist. Attorney; Jason D. Wood-    **Motion of Defendants Jason D.**
18 bury, Carson City Dist. Attorney; Arthur E. Mallory,    **Woodbury, Carson City District**
   Churchill County Dist. Attorney; Steven Wolfson,       **Attorney, and Stephen B. Rye,**
19 Clark County Dist. Attorney; Mark B. Jackson, Doug-    **Lyon County District Attorney,**
   las County Dist. Attorney; Tyler Ingram, Elko County      **for Relief from**
20 Dist. Attorney; Robert E. Glennen, III, Esmeralda           **Judgment Under**
   County Dist. Attorney; Theodore Beutel, Eureka       **Fed. R. Civ. P. 60(b)(5)**
21 County Dist. Attorney; Kevin Pasquale, Humboldt
   County Dist. Attorney; William E. Schaeffer, Lander    ORAL ARGUMENT REQUESTED
22 County Dist. Attorney; Dylan V. Frehner, Lincoln
   County Dist. Attorney; Stephen B. Rye, Lyon County
23 Dist. Attorney; T. Jaren Stanton, Mineral County Dist.
   Attorney; Brian T. Kunzi, Nye County Dist. Attorney;
24 Bryce R. Shields, Pershing County Dist. Attorney;
   Anne Langer, Storey County Dist. Attorney; James S.
25 Beecher, White Pine County Dist. Attorney,
                                      Defendants.**

26 _____

27
   ** Current office-holder Defendants were automatically substituted for those in *Glick v. McKay*,
28 616 F. Supp. 322 (D. Nev. 1985). Fed. R. Civ. P. 25(d).

                              1

# Motion

Defendants Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon County District Attorney, move for relief from the Court's Judgment (Dkt #74) and the Clerk's Judgment in a Civil Case (Dkt #75). Fed. R. Civ. P. 60(b)(5). This Court's Judgment states:

> THIS MATTER comes before the Court upon the motion filed by Plaintiffs herein for the Entry of Summary Judgment. The Court, finding good cause therefor in that there is no question of material fact and Plaintiffs are entitled to Judgment as a matter of law, does hereby enter Judgment in favor of Plaintiffs and against Defendants, and each of them, jointly and severally as follows:
> 1. Declaring that NRS 442.255 and NRS 442.2555 are unconstitutional; and
> 2. Permanently enjoining enforcement of NRS 442.255, NRS 442.2555 and NRS 442.257.

The Clerk's Judgment entered accordingly states (underline and bold in original):

> IT IS ORDERED AND ADJUDGED that **JUDGMENT** is entered in favor of Plaintiffs and against Defendants, and each of them, jointly and severally, as follows:
> 1. Declaring that NRS 442.255 and NRS 442.2555 are unconstitutional; and
> 2. Permanently enjoining enforcement of NRS 442.255, NRS 442.2555 and NRS 442.257.

These Judgments (collectively "**Judgment**") were based on *Glick v. McKay*, 616 F. Supp. 322 (D. Nev. 1985) (using dkt. no. "CV-R-85-33" in error), and *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991), both based on the abortion right in *Roe v. Wade*, 410 U.S. 113 (1973). "[A]pplying [the Judgment] prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5), because

- *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022), removed its foundation by overruling *Roe* and *Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833 (1992), and substituting a rational-basis test that the challenged provisions readily survive;[1] and

- *Lambert v. Wicklund*, 520 U.S. 292 (1997) (per curiam), abrogated *Glick*, 937 F.2d 434.

---

[1] That *Dobbs* also abrogated cases recognizing third-party standing in the abortion context, *see* 142 S.Ct. at 2275, is a further reason to vacate. All hyperlinks herein functioned as of November 28, 2023.

## Memorandum of Points and Authorities in Support of Motion

## Parties, Counsel & Service

Plaintiffs in 1985 were Dr. Glick and Planned Parenthood of Washoe County ("**PPWC**"). Movants are separately filing a suggestion of Dr. Glick's death under Rule 25(a)(1), which authorizes "the proper party" to move to substitute. Fed. R. Civ. P. 25(a)(1). Rule 25 applies to post-judgment actions. *See, e.g.*, *Rodriguez-Miranda v. Benin*, 829 F.3d 29, 40 (1st Cir. 2016), *quoted with approval in GMAT Legal Title Trust 2013-1 v. SFR Invs. Pool 1, LLC*, 2018 U.S. Dist. LEXIS 26978, *3. Whoever is now assuming Dr. Glick's role and interest herein, i.e., a physician wanting to perform abortions on minors without complying with Nevada's parental-notice provisions, would be such a "proper party." *See Glick*, 616 F. Supp. at 323. That person is unknown to Movants but is necessarily known to PPWC's successor in interest. Under Rule 25(a)(1), absent such a motion "the action by . . . the decedent must be dismissed." But since Movants seek relief *from judgment* in a case only reopened by operation of Rule 60(b)(5), it is too late to dismiss Dr. Glick's claim. However, only for purposes of establishing a successor in interest to PPWC in this case, Movants believe "the right sought to be enforced survives"[2] for PPWC's successor in interest, Fed. R. Civ. P. 25(a)(2), so a motion to substitute for Dr. Glick is permitted but not required.

A search for PPWC at esos.nv.gov/EntitySearch/OnlineEntitySearch yields no results. Rule 25(c) addresses interest transfers, including by corporate mergers. *See* 7C Fed. Prac. & Proc. Civ. § 1958 (3d ed.). PPWC's transferee is Planned Parenthood Mar Monte, Inc. ("**PPMM**") at 455 West Fifth St. in Reno, *see* www.plannedparenthood.org/planned-parenthood-mar-monte/contact-us, which offers abortion services to minors without requiring parental notice, *see* www.plannedparenthood.org/planned-parenthood-mar-monte/patient-resources/information-for-teens. PPMM is at 455 West Fifth Street in Reno; its formation date is 07/29/1999.[3] The Planned

---

[2]  Obviously, the abortion right declared in *Roe v. Wade*, 410 U.S. 113 (1973), was eliminated by *Dobbs*, 142 S.Ct. 2228, so the present motion should be granted. But that abortion right was the right Glick and PPWC both asserted, so that "right . . . survives" for the purpose of establishing a successor in interest.

[3]  Search esos.nv.gov/EntitySearch/OnlineEntitySearch for "Planned Parenthood Mar Monte, Inc." "Registered Agent Information" lists Tanya McDougall-Johnson at that address.

Parenthood entity operating in Washoe County from 1971 to 1997 was Planned Parenthood of Northern Nevada, also at 455 West Fifth Street.[4] PPMM was formed by "mergers of Planned Parenthood affiliates and independent health centers during the 1990s." *See* www.plannedparenthood.org/planned-parenthood-mar-monte/who-we-are/mission-and-history. One was with Planned Parenthood of Northern Nevada. *See* B.D. Spence, *Planned Parenthood to merge*, Recordnet.com (Sept. 27, 1996), www.recordnet.com/story/news/1996/09/27/planned-parenthood-to-merge/50839953007/. PPMM is also the successor in interest based on abortion services. *Cf. Lucero v. Trosch*, 121 F.3d 59 (11th Cir. 1997) (new owner of abortion business could be joined as a party plaintiff to receive the protection of an injunction obtained by prior owner). So PPMM may move to be substituted. But Rule 25(c) says "[i]f an interest is transferred, the action may be continued by . . . the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."

> The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on the successor in interest though the successor is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.

7C Fed. Prac. & Proc. Civ. § 1958 (3d ed.) (citations omitted). Thus, PPMM may move to substitute or assure that any defense it wishes to make is provided on behalf of the merged PPWC.

1985 Defendants were Attorney General McKay and district attorneys listed in *Glick*, 616 F. Supp. at 322. Public-office substitutions are automatic, Fed. R. Civ. P. 25(d), so Movants substituted defendants in the present caption based on the current Attorney General and district attorneys at ag.nv.gov/uploadedFiles/agnvgov/Content/Home/NVDAA%20CONTACT%20LIST.pdf.

Movants Jason D. Woodbury, Carson City District Attorney, and Stephen B. Rye, Lyon County District Attorney, are successors in office to defendants Plaintiffs sued. They seek relief from the Judgment preventing them from enforcing Nevada's parental-notice provisions. Should other defendants not support Movants, such issues were raised and rejected in *Bryant v. Woodall*, 622 F. Supp. 3d 147, 152 (M.D.N.C. 2022). There the court sua sponte ordered post-*Dobbs*

---

[4] Search esos.nv.gov/EntitySearch/OnlineEntitySearch for "Planned Parenthood of Northern Nevada."

briefing as "injunctive relief granted in this case may now be contrary to law." *Id.* at 150 (citation omitted). Plaintiffs there argued against lifting the injunction on abortion restrictions, and Defendants *also* argued that "[l]ifting the injunction will likely worsen the public confusion that is inevitable from such a profound reversal in the law." *Id.* at 151 (citation omitted). The court said, "Plaintiffs' and Defendants' arguments illustrate why this injunction must be dissolved and dismissed," since *Dobbs*'s elimination of the federal abortion right "depriv[ed] the injunction of any constitutional basis from which to enjoin the challenged [provisions]." *Id.* That the two district attorneys "ha[d] no intention to exercise that enforcement authority," and no other district attorney indicated an intention to enforce the provisions, was simply "not a persuasive reason to maintain the injunction" because "the likelihood of future prosecution will always be difficult to predict." *Id.* (quotation marks omitted; citations omitted). "'[A] court of equity will not grant an injunction to restrain one from doing what he is not attempting to do and does not intend to do.'" *Id.* at 154 (citation omitted).

The Civil Cover Sheet lists Plaintiffs' counsel as Stanley H. Brown, Chartered, Stanley H. Brown, Sr., and Stanley H. Brown Jr. at 147 East Liberty Street, Reno, NV 89501. *See also Glick*, 616 F. Supp. at 323 (same). Nevada State Bar records show Stanley H. Brown, Sr. deceased but Stanley H. Brown, Jr. practicing at 127 East Liberty Street. *See* nvbar.org/for-the-public/find-a-lawyer/?usearch=stanley%20H.%20Brown. So Movants are serving attorney Brown, Jr. both by this Court's electronic filing system (where he is listed as Plaintiffs' counsel of record with an email address) and by mail at his new address, as required by Rules 5 and 25 But Movants are also serving PPMM directly because they are unsure that attorney Brown's representation of PPWC continues with PPMM and because in *FDIC v. Harger*, 778 F. Supp. 2d 1123, 1133 (D.N.M. 2011), the court found notice to counsel appearing twenty years prior did not suffice without serving the party. Counsel for all Defendants was the Attorney General. *See* Docket p. 1. The specific attorney listed for the Attorney General's office, Brooke Nielsen, no longer appears to be employed by Nevada, *see* https://transparentnevada.com/directory/?department=&q=Nielsen, so Movants are serving the Attorney General. For like reasons, the also are serving the current district attorneys. Movants withdraw and do not renew their prede-

cessors' consent for Attorney General representation in this matter.

## Statutory Provisions

The Judgment declared unconstitutional and permanently enjoined three provisions: NRS § 442.255 ("**Notice Requirement**" with "**Judicial-Bypass Procedure**"); NRS § 442.2555 ("**Appeal Procedure**"), and NRS § 442.257 ("**Penalty Provision**"). *See Glick*, 937 F.2d at 442-43 (1985 texts of 442.255 and 442.2555); www.leg.state.nv.us/nrs/nrs-442.html#NRS442Sec255 (current texts). A 2015 Appeal Procedure amendment does not affect the present Motion.

## Statement of the Case

On June 28, 1985, Dr. Glick and PPWC challenged the constitutionality of the foregoing provisions "pursuant to the United States Constitution and 42 U.S.C. § 1983," *Glick*, 616 F. Supp. at 323, moving for a preliminary injunction (Dkt. #2) and a temporary restraining order (Dkt. # 5). On the same date, this Court issued a temporary restraining order against enforcement of the challenged provisions (Dkt. #6). On July 17, 1985, this Court entered an order granting the preliminary injunction (Dkt. #23), reported at 616 F. Supp. 322.

In its preliminary-injunction order, this Court noted the challenge's sole basis: "[t]he [federal] constitutional guarantee of personal liberty [that] protects a woman's right to terminate her pregnancy." 616 F. Supp. at 324 (citing *Roe*, 410 U.S. 113). But it said that "this right is not absolute and the Supreme Court has noted that 'a State's interest in protecting immature minors will sustain a requirement of a consent substitute, either parental or judicial.'" *Id.* (quoting *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 439 (1983) ("***Akron I***")). "Thus, Nevada's parental notification statute is not per se unconstitutional and must be analyzed under the applicable constitutional analysis." *Id.* Noting that the parties disagreed over whether parental-*consent* analysis applied to the Notice Requirement, *id.* at 324, this Court decided to apply the parental-consent analysis, *id.* at 325. The Court preliminarily enjoined NRS §§ 442.255, 442.2555, and 442.257. *Id.* at 325-28.

Defendants appealed that order. *Glick*, 937 F.2d at 436. The Ninth Circuit said "although this appeal arises from a ruling on a motion for a preliminary injunction, important constitutional

1   issues are at stake and the customary discretion accorded to a district court's ruling on a prelimi-

2   nary injunction yields to our plenary scope of review as to the applicable law." *Id.* (citation omit-

3   ted). The Ninth Circuit conducted briefing and argument, then "withheld judgment pending the

4   decision of the United States Supreme Court in *Thornburgh v. American College of Obstetri-*

5   *cians & Gynecologists*, 476 U.S. 747 (1986), *Hartigan v. Zbaraz*, 484 U.S. 171 (1987), *Hodgson*

6   *v. Minnesota*, 497 U.S. 417 (1990), and *Ohio v. Akron Center for Reproductive Health*, 497 U.S.

7   502 (1990) (*Akron II*)[5] . . . ." *Glick*, 937 F.2d at 436. It decided it need not decide appellants'

8   argument, left open in *Akron II*, that since a notification requirement lacked the potential for a

9   veto, a judicial bypass provision was not constitutionally required. *Id.* at 436. Rather, it decided

10  that it need only address the adequacy of the bypass procedure:

11          Though we hold *infra* that the Nevada statute does not similarly satisfy the requirements
            for a parental consent statute, we need not address whether such a judicial or other bypass
12          procedure is constitutionally required. Appellees attack only the adequacy of the judicial
            bypass, not the lack of it. Because the Nevada parental notification statute contains a bypass
13          procedure, we must address the constitutional adequacy of the procedure, but we are con-
            strained from addressing the constitutional necessity of such a procedure.
14

15  *Id.* at 436-37 (paragraph break removed). Noting that "*Akron II* . . . held that a bypass procedure

16  that would suffice as a consent statute will suffice as a notice statute," *id.* at 437, the court ana-

17  lyzed the Notice Requirement under "[t]he four *Bellotti* [*II*] criteria applied in *Akron II*," *id.* (cit-

18  ing *Akron II*, 497 U.S. at 511-13 (citing *Bellotti v. Baird*, 443 U.S. 622, 643-44 (1979) (plurality

19  opinion) ("***Bellotti II***"))). Finding problems,[6] the panel affirmed the preliminary injunction:

20          We hold that a bypass procedure within a parental notification statute must meet constitu-
            tional scrutiny. Because we find that the Nevada bypass procedure fails to meet the require-
21          ments for a consent statute bypass, and also does not meet the expediency requirement for
            a notice statute bypass, . . . the district court properly enjoined NRS 442.255, NRS
22          442.2555, and NRS 442.257.
23

24  937 F.2d at 442. So the identified problems were with the bypass and expediency.

25          On October 10, 1991, this Court entered Judgment for declaratory and permanent injunctive

26  _____

27      [5]  As established below, *Akron II* (1990) provided controlling precedent by upholding a
        parental-notice provision nearly identical to Nevada's at issue in *Glick*. *See* Part II.

28      [6]  The panel's erroneous analysis was abrogated in *Wicklund*, 520 U.S. 292. *See* Part II.

1   relief without further analysis, *see supra* at 2 (Judgment language), so that Judgment was based

2   on the analysis in this Court's preliminary-injunction analysis and the Ninth Circuit's opinion.

3   ## Argument

4   *Legal Standard.* This Court should provide Movants relief from the Judgment preventing

5   enforcement of Nevada's parental-notification provisions under Rule 60(b)(5): "On motion and

6   just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons:

7   . . . (5) . . . applying it prospectively is no longer equitable." The core issue is "whether ongoing

8   enforcement of the original [injunction] is supported by ongoing violation of federal law." *See*

9   *Horne v. Flores*, 557 U.S. 433, 454 (2009). If not, a severe federalism problem arises. *See, e.g.*,

10  *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 389 (1992). Modifying an injunction under

11  Rule 60(b)(5) is within a district court's discretion, but "a district court abuses its discretion by

12  refusing to modify an injunction even after its legal basis has evaporated." *California by &*

13  *through Becerra v. United States Environmental Protection Agency*, 978 F.3d 708, 711 (9th Cir.

14  2020) ("***EPA***"); *see also id.* at 713 (same). "An unbroken line of Supreme Court cases makes

15  clear that it is an abuse of discretion to deny a modification of an injunction after the law under-

16  lying the order changes to permit what was previously forbidden." *Id.* at 713-14 (collecting

17  cases); *see also id.* at 715 (Ninth Circuit and other circuit precedents holding same). For exam-

18  ple, the Ninth Circuit said that *Agostini v. Felton*, 521 U.S. 203 (1997), "confirms the equitable

19  principle that when the law changes to permit what was previously forbidden, it is an abuse of

20  discretion not to modify an injunction based on the old law." *Id.* at 714-15. That "equitable princi-

21  ple" satisfies Rule 60(b)(5)'s "no longer equitable" analysis without further consideration of eq-

22  uitable factors in cases like this. The Ninth Circuit in *EPA* said this in rejecting plaintiff states'

23  argument "that courts must look beyond the new regulations and conduct a broad, fact-specific

24  inquiry into whether modification prevents inequity." *Id.* at 713. For example, it said, *Agostini*

25

26

27

28

"held —without any analysis of other equitable factors—that the City was entitled to relief from the prospective injunction" after the U.S. Supreme Court's "Establishment Clause jurisprudence had shifted so significantly that the prior cases supporting the injunction were no longer good law." *Id.* at 714 (citing *Agostini*, 521 U.S. at 208-09). Following *Agostini*, the Ninth Circuit "relied solely on the law without considering other equitable factors." *Id.* at 715 (citations omitted).

*Application by Other Courts.* Other district courts have applied Rule 60(b) to vacate similar injunctions post-*Dobbs*. For example, in *June Medical Services LLC v. Phillips*, No. 14-525-JWD-RLB, 2022 WL 16924100 (M.D. La. Nov. 14, 2022), the court held that post-*Dobbs* it was no longer in the public interest and no longer equitable to maintain a permanent injunction barring enforcement of a Louisiana law requiring doctors performing abortions to have admitting privileges at a nearby hospital (which it held also met the rational-basis test), so it vacated the injunction. For another example, in *Bryant v. Woodall*, 622 F. Supp. 3d 147 (M.D.N.C. 2022), the court sua sponte ordered briefing on whether a permanent injunction against enforcement of North Carolina abortion regulations should be lifted pursuant to Rule 60(b) and then ordered that the "the injunction described in the summary judgment order [citations omitted] and the Judgment [citation omitted], is hereby VACATED and DISSOLVED, and the injunctive relief is DISMISSED," *id.* at 155. Similarly, three circuit courts have vacated abortion-regulation injunctions post-*Dobbs*. *See Whole Woman's Health v. Young*, 37 F.4th 1098, 1099 (5th Cir. 2022); *Sistersong Women of Color Reprod. Justice Collective v. Governor*, 40 F.4th 1320, 1324 (11th Cir. 2022); *Planned Parenthood S. Atl. v. Wilson*, 2022 WL 2900658 (4th Cir. July 21, 2022).

*Application to Judgment.* As stated in the Motion, *supra* at 2, and developed next, the Judgment should be vacated because (**I**) *Dobbs* (2022) removed the Judgment's abortion-right foundation, substituting a rational-basis test that Nevada's parental-notice law readily survives; (**II**) even under *Roe*, the Supreme Court abrogated *Glick* (1991) in *Wicklund* (1997), holding that the controlling precedent was *Akron II* (1990), under which Nevada's parental-notice provisions were constitutional; and (**III**) applying the Judgment prospectively is not equitable.

9

# I.

### *Dobbs* replaced the Judgment's foundation and analysis
### with a rational-basis scrutiny that Nevada's law readily survives.

As established in the Statement of the Case, *Glick* was based solely on the right and scrutiny in *Roe*, 410 U.S. 113, and its progeny. But as established next: (**A**) *Dobbs* removed the Judgment's federal-right foundation; (**B**) *Dobbs* replaced the Judgment's analysis with a rational-basis test; and (**C**) Nevada's law readily meets the governing rational-basis scrutiny.

**A. *Dobbs* removed the Judgment's federal-right foundation.**

*Dobbs* removed the Judgment's federal-right foundation by overruling *Roe* and *Casey*, 505 U.S. 833, because abortion is not "protected by *any* constitutional provision" (emphasis added):

> We hold that *Roe* and *Casey* must be overruled. The Constitution makes no reference to abortion, and *no such right is implicitly protected by any constitutional provision*, including the one on which the defenders of *Roe* and *Casey* now chiefly rely—the Due Process Clause of the Fourteenth Amendment. That provision has been held to guarantee some rights that are not mentioned in the Constitution, but any such right must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). The right to abortion does not fall within this category.

142 S.Ct. at 2242 (emphasis added; paragraph break removed). So the abortion issue returns to the states: "We therefore hold that the Constitution does not confer a right to abortion. *Roe* and *Casey* must be overruled, and the authority to regulate abortion must be returned to the people and their elected representatives." *Id.* at 2279; *see also id.* at 2284 ("We now overrule those decisions and return that authority to the people and their elected representatives."). That overruling justifies relief from the Judgment because it removes *Glick*'s federal-right foundation.

**B. *Dobbs* replaced the Judgment's analysis with a rational-basis test.**

With the overruling of *Roe*, 410 U.S. 113, and *Casey*, 505 U.S. 833, their analyses were also overruled, so *Dobbs* removed the Judgment's analysis. As established next (**1**) *Roe*'s strict scrutiny and *Casey*'s undue-burden test are gone, (**2**) facial challenges are governed by the no-set-of-circumstances test, and (**3**) *Dobbs* established a rational-basis test.

**1. *Roe*'s strict scrutiny and *Casey*'s undue-burden test are gone.**

With *Dobbs*'s overruling of *Roe* and *Casey*, the strict scrutiny of *Roe*, 410 U.S. at 155, and

the undue-burden test of *Casey*, 505 U.S. at 878, are gone. All federal abortion cases post-*Roe*
(1973) and pre-*Casey* are built on *Roe*'s strict scrutiny. That includes the analyses in *Glick*, 616
F. Supp. 322, *Glick*, 937 F.2d 434, and this Court's October 10, 1991 Judgment. *Casey* replaced
that analysis, but *Casey*'s analysis is also overruled. So the Judgment's analysis is gone. *Dobbs*
also abrogated cases recognizing third-party standing in abortion cases, 142 S.Ct. at 2275, pro-
viding another reason to vacate the Judgment because Plaintiffs cannot assert patients' rights.

    **2.   Facial challenges are governed by the no-set-of-circumstances test.**

    As the present case is a facial challenge, the applicable facial-challenge test must be estab-
lished and followed. *Dobbs* noted that "[t]he Court's abortion cases have diluted the strict stan-
dard for facial constitutional challenges." 142 S. Ct. at 2275 (citing compare *United States v.
Salerno*, 481 U.S. 739, 745 (1987), with *Casey*, 505 U.S. at 895, and see also *Dobbs*, 142 S. Ct.
at 2771-74). With *Casey* overruled, that dilution is gone. But even back in *Akron II* (1990), the
Ohio parental-notice law was challenged facially and the Supreme Court held that the no-set-of-
circumstances rule applied and "worst-case" speculation must be rejected:

> [B]ecause appellees are making a facial challenge to a statute, they must show that "no set
> of circumstances exists under which the Act would be valid." *Webster v. Reproductive
> Health Services*, 492 U.S. 490, 524 (1989) (O'CONNOR, J., concurring). The Court of
> Appeals should not have invalidated the Ohio statute on a *facial* challenge based upon a
> *worst-case analysis that may never occur.*

*Akron II*, 497 U.S. at 514 (emphasis added). Of course, this *Akron II* test is the well-known test
stated earlier in *Salerno*, 481 U.S. at 745 ("insufficient" to show that a challenged provision
"might operate unconstitutionally under some conceivable set of circumstances"); *id.* (must "es-
tablish that no set of circumstances exists under which the [provision] would be valid") So even
under *Roe*, *Salerno* controlled in abortion cases, including parental-involvement cases.

    A question about the ongoing applicability of that test in the abortion context arose when
*Casey* (1992) employed a large-fraction analysis: If "in a large fraction of the cases in which [the
challenged spousal-notification provision] is relevant, it will operate as a substantial obstacle to a
woman's choice to undergo an abortion[,] [i]t is an undue burden, and therefore invalid." *Casey*,
505 U.S. at 895. The dissent noted that the large-fraction test did not comply with *Salerno*'s no-

set-of-circumstances test for facial challenges. *Id.* at 972-73 (Rehnquist, C.J., joined by White, Scalia & Thomas, JJ., concurring in the judgment in part and dissenting in part).

Even under *Casey*'s large-fraction test, parental-involvement laws such as *Akron II*'s were constitutional. After holding that a spousal-notice law was an undue burden on a substantial fraction of women, *Casey* distinguished *parental-involvement* cases, 505 U.S. at 895:

> This [spousal-notice] conclusion is in no way inconsistent with our decisions upholding parental notification or consent requirements. See, *e.g.*, *Akron II*, 497 U.S., at 510-519; *Bellotti v. Baird*, 443 U.S. 622 (1979) (*Bellotti II* ); *Planned Parenthood of Central Mo. v. Danforth*, 428 U.S. [52,] 74 [(1976)]. Those enactments, and our judgment that they are constitutional, are based on the quite reasonable assumption that minors will benefit from consultation with their parents and that children will often not realize that their parents have their best interests at heart. We cannot adopt a parallel assumption about adult women.

After *Casey*, the *Salerno* test *should* have controlled abortion cases because the Supreme Court has made *no* statement that it was overruling *Salerno* in the abortion context, which statement was required to deem it overruled since the Court instructs courts *not* to "conclude that its recent cases have, by implication, overruled an earlier precedent," *Agostini,* 521 U.S. at 237.

Yet in 1999, the Ninth Circuit decided that "[a]lthough the Court ha[d] yet to address the conflict between *Casey* and *Salerno* in a majority decision, members of the [Supreme] Court have offered their opinions," on which the Ninth Circuit panel decided it could rely to decide that "*Casey* has overruled *Salerno* in the context of facial challenges to abortion statutes . . . ." *Planned Parenthood of Southern Arizona v. Lawall*, 180 F.3d 1022, 1025, 1027 (1999), *amended on other grounds*, *Planned Parenthood of Southern Arizona v. Lawall*, 193 F.3d 1042 (9th Cir. 1999) (Order amending opinion and denying en-banc rehearing). So the Ninth Circuit decided *Salerno*'s test did not apply to a facial challenge to a judicial bypass to a parental-consent statute. *Id.* at 1024.[7] Notably, that *Lawall* decision ignored *Casey*'s own distinguishing of parental-

---

[7]  In the Order amending its *Lawall* opinion and denying en banc rehearing, 193 F.3d 1042, dissenters said *Salerno* governed, but even under *Casey* "plaintiffs . . . have not shown that Arizona's trial courts will impermissibly drag out their consideration of a 'large fraction' of minors' petitions for judicial bypasses." *Id.* at 1045-47 (O'Scannlain, J., joined by Nelson & Kleinfeld, JJ., dissenting). The dissent said "[t]his holding flies in the face of . . . *Hodgson v. Minnesota*, 497 U.S. 417 (1990) (plurality opinion). In *Hodgson*, five Justices (with Justice O'Connor writ-

involvement cases under its new undue-burden, large-fraction analysis and citing *Akron II*'s law as a constitutionally permissible example, 505 U.S. at 895. The Ninth Circuit's refusal to follow Supreme Court authority was presaged in *Glick* where the Ninth Circuit first noted *Akron II*'s facial-challenge rule and followed it, 937 F.2d at 439 (confidentiality criterion), but then again noted *Akron II*'s rule and did *not* follow it, *id.* at 440 n.4 (expedition criterion).

But now the large-fraction analysis is gone with the overruling of *Casey* in *Dobbs*. *Salerno*'s analysis governs abortion-case facial challenges. And long before *Dobbs* overruled *Casey* in 2022, the Supreme Court was rejecting facial challenges in abortion cases. *See, e.g.*, *Gonzalez v. Carhart*, 550 U.S. 124, 167 (2007) (" [T]hese facial attacks should not have been entertained in the first instance. In these circumstances the proper means to consider exceptions is by as-applied challenges."); *id.* ("The latitude given facial challenges in the First Amendment context is inapplicable here. Broad challenges of this type impose 'a heavy burden' upon the parties maintaining the suit. *Rust v. Sullivan*, 500 U.S. 173, 183 (1991).").[8]

As the present case involved a facial challenge, Plaintiffs had the burden to prove that *no* circumstances exist under which the challenged provisions would be constitutionally applied. That was not required of them, and the Ninth Circuit erroneously failed to follow *Salerno*'s test. 937 F.2d at 440 n.4. That requires vacating the Judgment because under the proper test Nevada's provisions survived strict scrutiny. *See infra* Part II (further discussion of this *Glick* problem).[9]

---

ing separately) upheld the judicial bypass provision of a Minnesota parental-notice statute that imposed no specific time-limits on the courts' disposition of bypass petitions." 193 F.3d at 1044.

[8]  *Rust* (a challenge to restrictions on abortion counseling, referral, and advocacy restrictions under federal Title X) stated the facial-challenge test thus, 500 U.S. at 183:

> Petitioners face a heavy burden in seeking to have the regulations invalidated as facially unconstitutional. 'A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that [the regulations] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them] wholly invalid.' *United States v. Salerno*, 481 U.S. 739, 745 (1987).

[9]  Applying *Salerno*'s analysis also establishes that *Wicklund* entirely (not partially) abrogated *Glick*. *See infra* Part II.

### 3.   *Dobbs* established a rational-basis test.

*Dobbs* substituted a rational-basis test for the analysis on which the Judgment was based. Under the U.S. Constitution, provisions regulating abortion now are subject only to low, rational-basis scrutiny: "[R]ational-basis review is the appropriate standard for . . . challenges [to abortion regulations]." 142 S. Ct. at 2283. "[W]hen such regulations are challenged under the Constitution, courts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies.'" *Id.* at 2283-84 (citation omitted). "A law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity.'" *Id.* at 2284 (citation omitted). "It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* (citation omitted). Citing legitimate interests for restricting abortion, *id.*, the Court held that those interests justified Mississippi's ban on abortion after 15 weeks of probable gestational age: "These legitimate interests provide a rational basis for the Gestational Age Act, and it follows that respondent's constitutional challenge must fail." *Id.*

That analysis also applies to *Roe*'s progeny regarding parental-involvement laws. *Dobbs* noted that "[d]espite *Roe*'s weaknesses, its reach was steadily extended in the years that followed. The Court struck down laws requiring . . . that minors obtain parental consent . . . ." *Id.* at 2271. But with the *Roe* and *Casey* foundation gone—because "no [abortion] right is implicitly protected by any constitutional provision," *Dobbs*, 142 S. Ct. at 2242—there is no federal constitutional basis to employ either *Roe*'s strict scrutiny or *Casey*'s undue-burden test in reviewing parental-involvement requirements for minors seeking abortion. Rather, as *Dobbs* established, rational-basis scrutiny now controls abortion law under the federal Constitution. *Id.* at 2283.

### C.   Nevada's law readily meets the governing rational-basis scrutiny.

Nevada's parental-notice provisions are constitutional under rational-basis scrutiny. As *Dobbs* established, "rational-basis review is the appropriate standard," *id.*, which requires only "a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* at 2284. *Dobbs* provided legitimate reasons for the post-15-week abortion ban provision at issue there (which it upheld):

> These legitimate interests include respect for and preservation of prenatal life at all stages of development, *Gonzales*, 550 U.S. [at 157-158]; the protection of maternal health and safety; the elimination of particularly gruesome or barbaric medical procedures; the preservation of the integrity of the medical profession; the mitigation of fetal pain; and the prevention of discrimination on the basis of race, sex, or disability. See *id.*, at 156-157; *Roe*, 410 U.S. at 150; cf. [*Washington v.*] *Glucksberg*, 521 U.S. [702,] 728-731 [(1997)] (identifying similar interests).

*Id.* And specifically in the parental-notice context, *Akron II* held that a parental-notice requirement is justified by the requisite legitimate interests, for example, 497 U.S. at 520:

> It is both rational and fair for the State to conclude that, in most instances, the family will strive to give a lonely or even terrified minor advice that is both compassionate and mature. The statute in issue here is a rational way to further those ends. It would deny all dignity to the family to say that the State cannot take this reasonable step in regulating its health professions to ensure that, in most cases, a young woman will receive guidance and understanding from a parent. We uphold H.B. 319 on its face and reverse the judgment of the Court of Appeals.

That apples here. Since parental-notice laws have been held constitutional under both strict scrutiny, *see, e.g.*, *Akron II*, 497 U.S. 502, and undue-burden, large-fraction scrutiny, *see Casey*, 505 U.S. at 895, *a fortiori* they survive rational-basis scrutiny. Since minors have no federal abortion right, states may now even ban abortion, so *a fortiori* they may require parental notice.

## II.

### *Wicklund* abrogated the Judgment for failure to follow *Akron II*.

Even *post-Casey* and pre-*Dobbs*, *Glick*, 937 F.2d 434, was abrogated in *Wicklund*, 520 U.S. at 294-99, for failure to follow federal precedent in *Akron II*, 497 U.S. 502, under which Nevada's law was constitutional.[10] Westlaw's red-flagged *Glick* caveat says: "Severe Negative Treatment[:] Abrogated by Lambert v. Wicklund, U.S.Mont., March 31, 1997." 937 F.2d 434.

The Supreme Court's decision to summarily (i) reverse the Ninth Circuit in *Wicklund* and (ii) abrogate *Glick* was not a close call for the Supreme Court. It granted certiorari and summarily reversed the Ninth Circuit in a six-member, per-curiam opinion, with Justice Stevens (joined by Justices Ginsburg and Breyer) concurring in the judgment. 520 U.S. at 293, 301. So there was

---

[10]  With the reversal of *Roe* and *Casey* in *Dobbs*, federal parental-involvement cases like *Akron II* no longer control generally, but they show Nevada's provisions survive any scrutiny level. So though no state-law challenge is at issue here, the provisions should survive any such scrutiny.

1    unanimous agreement that the Ninth Circuit erred in *Wicklund* by relying on its erroneous *Glick*

2    decision, and the error was so obvious that (i) full briefing and oral argument were unnecessary

3    and (ii) the Ninth Circuit could be summarily reversed in a for-the-court opinion.

4        The Supreme Court abrogated *Glick* in *Wicklund* while upholding a 1995 Montana parental-

5    notification statute the Supreme Court found "substantively indistinguishable" from (i) the Ohio

6    statute the Court upheld in *Akron II* and (ii) Nevada's statute at issue in *Glick*:

7        In *Akron* [*II*], we upheld a statute requiring a minor to notify one parent before having an
8        abortion, subject to a judicial bypass provision. We declined to decide whether a parental
        notification statute must include some sort of bypass provision to be constitutional. [497
9        U.S. at 510]. Instead, we held that this bypass provision satisfied the four *Bellotti*[ *II*, 443
        U.S. at 643-44,] criteria required for bypass provisions in parental *consent* statutes, and that
10       *a fortiori* it satisfied any criteria that might be required for bypass provisions in parental
        notification statutes. Critically for the case now before us, the judicial bypass provision we
11       examined in *Akron* was substantively indistinguishable from both the Montana judicial
        bypass provision at issue here and the Nevada provision at issue in *Glick*. See 497 U.S., at
12       508 (summarizing Ohio Rev. Code Ann. § 2151.85 (1995)).

13   *Wicklund*, 520 U.S. at 296 (emphasis in original). And the *Wicklund* Court again reiterated that

14   the statutes in the three states must be treated alike: "The Ohio parental notification statute at is-

15   sue [in *Akron II* ] was indistinguishable in any relevant way from the Montana statute at issue" in

16   *Wicklund*, *id.* at 297, which in turn was "substantively indistinguishable from . . . the Nevada

17   provision at issue in *Glick*," *id.* at 296. Yet in *Glick* the Ninth Circuit ignored the "virtual[] ident-

18   i[ty]" of both the Montana statute (in *Wicklund*) and the Nevada statute (in *Glick*) with the Ohio

19   statute that *Akron II* said met all of *Bellotti II*'s judicial-bypass criteria, *id.* (emphasis added):

20
21       Despite the fact that *Akron* [*II*] involved a parental notification statute, and *Bellotti* [*II*]
        involved a parental consent statute; despite the fact that *Akron* [*II*] involved a statute *virtu-*
22       *ally identical* to the Nevada statute at issue in *Glick*; and despite the fact that *Akron* [*II*]
        explicitly held that the statute met all of the *Bellotti* [*II*] requirements, the Ninth Circuit in
23       *Glick* struck down Nevada's parental notification statute as inconsistent with *Bellotti* . . . .

24   The Supreme Court noted the Ninth Circuit's failure in *Wicklund* to follow the *Akron II* prece-

25   dent regarding *Bellotti II*'s judicial-bypass criteria though the statutes were "indistinguishable in

26   any relevant way"—all based on the Ninth Circuit's error in *Glick*:

27       Based entirely on *Glick*, the Ninth Circuit in this case affirmed the District Court's ruling
        that the Montana statute is unconstitutional, since the statute allows waiver of the notifica-
28

> tion requirement only if the youth court determines that notification—not the abortion itself—is not in the minor's best interests. 93 F.3d, at 572.
>
> As should be evident from the foregoing, this decision simply cannot be squared with our decision in *Akron* [*II*]. The Ohio parental notification statute at issue there was <u>indistinguishable in any relevant way</u> from the Montana statute at issue here. Both allow for judicial bypass if the minor shows that parental *notification* is not in her best interests. We asked in *Akron* [*II*] whether this met the *Bellotti* [*II*] requirement that the minor be allowed to show that "the desired abortion would be in her best interests." We explicitly held that it did. 497 U. S., at 511. Thus, the Montana statute meets this requirement, too. In concluding otherwise, the Ninth Circuit was mistaken.

*Id.* at 297 (italics in original; underlining added). Despite the three provisions being "indistinguishable in any relevant way," *id.*, the Supreme Court noted that in *Wicklund* the Ninth Circuit declared itself bound by the Ninth Circuit's erroneous decision in *Glick*. *Id.* at 294. But the *Wicklund* district-court and Ninth-Circuit decisions—following the *Glick* precedent—failed to follow the controlling Supreme Court precedents, leading to reversal: "Because the reasons given by the District Court and the Ninth Circuit for striking down the Act are inconsistent with our precedents, we . . . reverse the judgment of the Ninth Circuit." *Id.* at 299.[11]

From the foregoing, it is clear that the analysis and holding of the Ninth Circuit opinion in *Glick* and (by extension) this Court's Judgment were erroneous, even pre-*Dobbs*, and were abrogated in *Wicklund* for failing to follow the controlling *Akron II* precedent (which governed as to both its facial-challenge and *Bellotti II*-criteria analyses). Though that suffices for vacating the Judgment herein, Nevada's parental-notice provisions are briefly addressed next to show that, as the Supreme Court said, they readily fit both *Akron II*'s facial-challenge analysis and *Bellotti II*'s four-criterion parental-*consent* analysis to further illustrate that the provisions were constitutional when preliminarily enjoined. The focus will be on the Ninth Circuit's analysis since it engaged in "plenary . . . review," *Glick*, 937 F.2d at 436, and ignored some concerns of this Court, such as with a "pocket approval" not providing a physician with a "tangible" order or whether "necessary

---

[11]   The Ninth Circuit then "remanded to the district court for further proceedings in light of *Lambert v. Wicklund*, 520 U.S. 292," to "consider in particular those contentions raised by plaintiffs that were not addressed by the Supreme Court." *Wicklund v. Lambert*, 112 F.3d 1040, 1040 (9th Cir. 1997). That court upheld Montana's parental-notice law under *Bellotti II*'s criteria and rejected an equal-protection challenge. *Wicklund v. Lambert*, 979 F. Supp. 1285 (D. Mont. 1997).

steps" to establish confidentiality sufficed.[12] *Glick*, 616 F. Supp. at 325.

Regarding the *Bellotti II* four-part criteria, the first was that a parental-consent law "allow the minor to bypass the consent requirement if she establishes that she is mature enough and well enough informed to make the abortion decision independently." *Wicklund*, 520 U.S. at 295. The Ninth Circuit held that Nevada's bypass procedures at NRS §§ 442.255(2)(a) and NRS 442.2555(3)(a) sufficed. *Glick*, 937 F.2d at 438 ("Under *Akron II*, the Nevada statute meets the first *Bellotti* [*II*] criterion.").

The second *Bellotti II* criterion was that the law "allow the minor to bypass the consent requirement if she establishes that the abortion would be in her best interests." *Wicklund*, 520 U.S. at 295. As just discussed, the Ninth Circuit erred on what the best-interests showing requires and failed to follow *Akron II*. *Id.* at 294-99. Since Montana's near-identical bypass procedure satisfied this *Bellotti II* criterion, *id.*, Nevada's does too.

The third *Bellotti II* criterion was that the law "ensure the minor's anonymity." *Id.* at 295. The Ninth Circuit held that NRS § 442.255(4) and the Nevada Supreme Court's April 30, 1991 order met this criterion. *Glick*, 937 F.2d at 439-40.

The fourth *Bellotti II* criterion was that the law "provide for expeditious bypass procedures." *Wicklund*, 520 U.S. at 295. Regarding the Nevada provisions in *Glick*, the Ninth Circuit held that because "the statute does not contain *any* time period within which the district court must rule upon a minor's petition under NRS 442.2555," 937 F.2d at 440 (emphasis in original), "[t]he district court review procedure does not meet the *Bellotti* [*II*] expediency criterion," *id.* at 441. Noting that the *Bellotti II* criterion was for a bypass to a *consent* requirement, the Ninth Circuit also decided that the district-court-review procedure failed the expedition requirement for a *notice* provision. *Id.* at 441-42. So the flaw found was based on *assuming* a court might not expedite.

But that holding is erroneous because *Glick* was a *facial* challenge. For such a challenge, *Akron II* (the precedent the Supreme Court said in *Wicklund* was controlling) said courts may not assume worst-case scenarios, such as state courts not being expeditious: "The Court of Appeals

---

[12]  *Akron II* considered and rejected both of these concerns. 497 U.S. at 515, 517.

should not have invalidated the Ohio [parental-notice] statute on a facial challenge based upon a worst-case analysis that may never occur." *Akron II*, 497 U.S. at 514. Because the Supreme Court held in *Wicklund* that (i) *Akron II*'s Ohio law met all *Bellotti II* criteria and (ii) the Ohio, Montana, and Nevada laws were "substantively indistinguishable," "virtually identical," and "indistinguishable in any relevant way," *see supra* Part II (citations omitted), the Court necessarily decided that Nevada's statutory decision not to impose a district-court time-limit did not distinguish the Nevada law from the Ohio and Montana laws in any relevant or substantive way. Thus, under *Akron II*, the Ninth Circuit's assumption that a state court would not act expeditiously was not a relevant, substantive, or proper basis to hold that the expediency criterion was not met.

Because all three cases involved *facial* challenges, the differences between the Ohio, Montana, and Nevada provisions were irrelevant and insubstantial, and the Supreme Court rejected speculative possibilities and assumed judges would act appropriately. Under *Akron II*'s no-set-of circumstances rule, if one circumstance is that a district-court judge would rule expeditiously, a facial challenge must fail. A non-expeditious ruling would be rare or never occur, and an as-applied challenge is available if the speculated event ever actually occurred. *Akron II* also noted that "[*Planned Parenthood Assn. of Kansas City, Mo., Inc. v.*] *Ashcroft*, [462 U.S. 476 (1983),] . . . upheld a Missouri statute that contained a bypass procedure that could require 17 calendar days *plus a sufficient time for deliberation and decisionmaking* at both the trial and appellate levels. See 462 U.S., at 47[9], n. 4,[13] 491, n. 16 . . . .[14]" *Akron II*, 497 U.S. at 514 (emphasis added). "[U]nder our precedents, the mere possibility that the procedure may require up to 22 days in a rare case is plainly insufficient to invalidate the statute *on its face*." *Id.* (emphasis added). *See also id.* at 513 ("We refuse to base a decision on the *facial* validity of a statute on the mere possibility of unauthorized, illegal disclosure by state employees." (emphasis added)); *id.* at

---

[13] *Ashcroft* provided the Missouri statute at issue, which had *no* deadline for the district court, so it was presumed the court would act expeditiously. *See* 462 U.S. at 479 n.4.

[14] The Supreme Court decided the appellate expedition was sufficient, though there was *no* appellate-court deadline, because "[t]here is no reason to believe that Missouri will not expedite any appeal consistent with the mandate in our prior opinions." 462 U.S. at 491 n.16.

517 ("Regardless of whether Ohio could have written a simpler statute, H.B. 319 survives a *facial challenge*." (emphasis added)); *id.* at 519 ("On this *facial challenge*, we find the physician notification requirement unobjectionable." (emphasis added)). Based on that facial-challenge analysis, the Supreme Court decided in *Wicklund* that the Ninth Circuit should not have held as it did in the facial challenge to Montana's law: "As with the Ohio statute in *Akron* [*II*], the challenge to the Montana statute here is a facial one. Under these circumstances, the Ninth Circuit was incorrect to assume that Montana's statute 'narrow[ed]' the *Bellotti* [*II*] test, 937 F.2d, at 439, as interpreted in *Akron* [*II*]." 520 U.S. at 298.

In the *Glick* facial challenge, the Ninth Circuit first noted and followed *Akron II*'s facial-challenge analysis, but then later rejected it. Regarding the *Bellotti II* confidentiality criterion, the court followed *Akron II* in rejecting a facial challenge:

> Following the lead of the Supreme Court, we refuse to base our decision on the facial validity of this provision requiring the courts to provide confidentiality on the mere possibility that the courts may illegally fail to do so. *Akron II*, 110 S.Ct. at 2980. NRS 442.255(4) meets the *Bellotti* [*II*] confidentiality prong.

*Glick*, 937 F.2d at 439. But regarding expedition, the Ninth Circuit did *not* follow *Akron II*:

> We acknowledge that the Supreme Court in *Akron II* did caution against invalidating a notification statute on a facial challenge based upon a worst-case analysis that may never occur. *See Akron II*, 110 S.Ct. at 2981. However, in *Akron II* the Court was considering a bypass procedure with a maximum time of twenty-two days, which the Court compared favorably with the seventeen-day period it upheld in *Ashcroft*, 462 U.S. at 477, n. 4, 491 n. 16. *See Akron II*, 110 S.Ct. at 2981.While a seventeen or twenty-two day bypass procedure period satisfies the *Bellotti* [*II*] requirement that the courts must conduct a bypass procedure with expediency to allow the minor an effective opportunity to obtain an abortion, an indefinite period does not. *See Akron II*, 110 S.Ct. at 2980; *Bellotti* [*II*], 443 U.S. at 644.

*Glick*, 937 F.2d at 440 n.4. Nor did it follow *Ashcroft*, in which the Supreme Court upheld "an indefinite period" as *Akron II* noted, 497 U.S. at 514 (statute at issue in *Ashcroft* "could require 17 calendar days *plus a sufficient time for deliberation and decisionmaking* at both the trial and appellate levels" (emphasis added)).

But in *Wicklund* the Supreme Court summarily reversed the Ninth Circuit's facial-challenge analysis in *Wicklund* and abrogated the same erroneous analysis in the Ninth Circuit's *Glick*

opinion because the Ninth Circuit failed to apply *Salerno*'s facial-challenge rule and *Akron II*'s application of that rule to a parental-notice statute. In effect, the Ninth Circuit was still applying the post-*Roe* hyper-strict scrutiny of abortion regulations that the Supreme Court had, in the parental-involvement context, rejected even in 1983 in *Akron II* and *Ashcroft*. More recent abortion cases have applied the High Court's same facial-challenge analysis, for example, in *Gonzalez*, 550 U.S. 124, which upheld the Partial-Birth Abortion Ban Act of 2003 against a facial challenge. *See, e.g.*, *id.* at 168 ("For this reason, '[a]s-applied challenges are the basic building blocks of constitutional adjudication.' Fallon, As-Applied and Facial Challenges and Third-Party Standing, 113 Harv. L. Rev. 1321, 1328 (2000).").

That *Wicklund* abrogated *all* of *Glick* is unaltered by the Ninth Circuit's dictum regarding *Glick* in its 1999 *Lawall* decision, wherein the Ninth Circuit dropped a footnote in passing attempting to rehabilitate *Glick* in part, *Lawall*, 180 F.3d at 1029 n.9 (parallel citation omitted):

> The Supreme Court has disapproved the analysis in *Glick*, in which we held unconstitutional a bypass procedure which allowed a minor to have an abortion if parental notification, and not the abortion itself, was not in the *minor's* best interests. *See Wicklund*, 520 U.S. at 297-99. Nothing in *Wicklund*, however, affects *Glick*'s holding regarding *Bellotti II*'s expediency requirement.

But that non-binding dictum is erroneous. While the Supreme Court did not expressly discuss the expediency criterion, it said Nevada's law did not differ in any relevant way from the constitutionally sound Ohio and Montana laws, indicating that, under *Salerno*, the differences in Nevada's law were not relevant. Moreover, *Wicklund* established that *Akron II* was the controlling precedent, and *Akron II* noted approvingly that *Ashcroft* "upheld a Missouri statute that could require 17 calendar days *plus a sufficient time for deliberation and decisionmaking* at both the trial and appellate levels," 497 U.S. at 514 (emphasis added). *Akron II* gave that *Ashcroft* example immediately after it stated the facial-challenge rule: "The Court of Appeals should not have invalidated the Ohio statute on a facial challenge based upon a worst-case analysis that may never occur." *Id.* So it was an illustration of the just-stated facial-challenge rule. Thus, *Akron II* and *Ashcroft* were the controlling precedents on this issue and definitively discredit the Ninth Circuit's *Lawall* dictum.

21

Moreover, that *Lawall* dictum was based on the Ninth Circuit's erroneous rejection of *Akron II*'s no-set-of-circumstances facial-challenge test in favor of *Casey*'s large-fraction test. 180 F.3d at 1027 ("In light of our previous suggestion, combined with the great weight of circuit authority holding that *Casey* has overruled *Salerno* in the context of facial challenges to abortion statutes, we apply *Casey*'s undue burden standard in determining the facial constitutionality of [the challenged parental-consent statute and judicial bypass]").[15] But *Akron II*'s no-set-of-circumstances facial-challenge test properly controlled, so the Ninth Circuit's *Lawall* dictum was based on a fundamental error regarding the facial challenges in *Glick*. Under *Salerno*'s facial-challenge test, which properly governed *Glick* for analyzing Nevada's provisions under *Bellotti II*'s expedition criterion, Nevada's law readily satisfied the expediency requirement. (It clearly does now, too, since any large-fraction argument about facial challenges is gone with *Casey*'s overruling.)

In sum, the Supreme Court in *Wicklund* abrogated *entirely* the Ninth Circuit's affirmation in *Glick* of this Court's Judgment. So the Judgment lacked constitutional support before *Dobbs* overruled *Roe* and *Casey* because it failed to follow controlling Supreme Court precedents.

### III.
### Applying the Judgment prospectively is not equitable.

As established, the Judgment's foundation and analysis were replaced by *Dobbs* (Part I), and even under the law post-*Roe* and pre-*Dobbs*, the Judgment's analysis was erroneous and so abrogated (Part II). Either the overruling or abrogation would suffice to meet Movants' Rule 60(b) burden to establish that it is inequitable to apply the Judgment prospectively. Fed. R. Civ. P. 60(b)(5). So the Judgment and its injunction should be vacated.

---

[15]  Ironically, *Lawall* cited Justice Stevens's statement that "*Salerno*'s 'no set of circumstances' rule was dictum and unsupported by law," 180 F.3d at 1026 (citation omitted), though *Akron II* said the rule controlled, 497 U.S. at 514 (citation omitted), mooting the dictum claim. In *Planned Parenthood of S. Arizona v. Lawall* ("**Lawall II**"), the Ninth Circuit equated the facial-challenge test with the undue-burden test: "In analyzing a facial challenge to an abortion statute, we apply the undue burden standard set forth in *Planned Parenthood v. Casey*, 505 U.S. 833, 895 (1992). *See Lawall*, 180 F.3d at 1027." 307 F.3d 783, 786 (9th Cir. 2002) (footnote omitted). *Lawall II* upheld Arizona's revised parental-consent against a facial challenge based on the third *Bellotti II* confidentiality requirement as *Akron II* had rejected a like facial challenge. 180 F.3d at 789.

Nor is there need for more to vacate the Judgment, as established in *Legal Standard* at the beginning of the Argument section. "[R]efusal to modify [an] injunction . . . , when a change in law dissolved the legal basis for its order, is an abuse of discretion." *EPA*, 978 F.3d at 713. "An unbroken line of Supreme Court cases makes clear that it is an abuse of discretion to deny a modification of an injunction after the law underlying the order changes to permit what was previously forbidden." *Id.* at 713-14. *Agostini*, 521 U.S. 203, "confirms the equitable principle that when the law changes to permit what was previously forbidden, it is an abuse of discretion not to modify an injunction based on the old law." 978 F.3d at 714-15. That "equitable principle" satisfies Rule 60(b)(5)'s "no longer equitable" element without further consideration of equitable factors. *Id.* at 713. *Agostini* "held—without any analysis of other equitable factors—that the City was entitled to relief from the prospective injunction" after the U.S. Supreme Court's "Establishment Clause jurisprudence had shifted so significantly that the prior cases supporting the injunction were no longer good law." *Id.* at 714. Following *Agostini*, the Ninth Circuit "relied solely on the law without considering other equitable factors." *Id.* at 715 (citations omitted).

Though considering equitable factors is not required, Movants note that the post-*Dobbs* district court applying Rule 60(b)(5) to vacate an injunction barring enforcement of a Louisiana abortion regulation also held that the "significant change in the law brought by *Dobbs* makes continued maintenance of the injunction *detrimental to the public interest* and inequitable so as to justify an order vacating it." *June Medical Services*, 2022 WL 16924100, at *13 (emphasis added). The court cited *Moore's Federal Practice* for the principle that in public-interest litigation, "'*[a]nd when no consent decree is involved, a change in the law that permits what was previously forbidden is sufficient by itself to warrant modification of the injunction, the court need not consider other factors such as the balance of harms*.'" *Id.* (quoting *Moore's Federal Practice—Civil* § 60.47(2)(b) (2002)) (emphasis added by court). The court then (i) noted that other courts had lifted injunctions post-*Dobbs*, *id.*, (ii) found cases purportedly saying the change in the law alone was insufficient to be "distinguishable or unpersuasive," *id.* at *14, and (iii) applied *Dobbs*'s rational-basis test to uphold the challenged provision, *id.* at *14-*15. Here as there, up-

holding an injunction against an abortion regulation that now passes constitutional muster would not be in the public interest, making it inequitable on that basis not to vacate the injunction.

## Conclusion

As established above, the Motion should be granted and this Court's Judgment (Dkt. #74) and the Clerk's Judgment (Dkt. #75) should be vacated, including the permanent injunction against "enforcement of NRS 442.255, NRS 442.2555 and NRS 442.257," because "applying them prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

Respectfully submitted,

/s/ Emily C. Mimnaugh

James Bopp, Jr. (IN Bar #2838-84)*
    jboppjr@aol.com
Richard E. Coleson (IN Bar #11527-70)*
    rcoleson@bopplaw.com
Joseph D. Maughon (VA Bar #87799)*
    jmaughon@bopplaw.com
THE BOPP LAW FIRM, PC
1 South Sixth St.
Terre Haute, IN 47807-3510
Telephone: (812) 232-2434
*Pro hac vice counsel will comply with LR IA
11-2 within 14 days.
*Counsel for Moving Defendants*

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
emimnaugh@pji.org
*Designated Resident Nevada Counsel for Moving Defendants*

24

1

# CERTIFICATE OF SERVICE

2

3

I hereby certify that on the 1st day of December 2023, I personally served a true and

4

correct copy of the foregoing Motion for Relief Under Fed. R. Civ. P. 60(b) by the following

5

means: U.S. Mail and Email (except where noted)

6

***Plaintiffs' Counsel and Plaintiff Successor in Interest***

7

Stanley H. Brown Jr.
127 East Liberty Street
Reno, NV 89501

8

shbjrlaw@gmail.com

9

Tel: (775) 337-8800

10

*Counsel for Plaintiffs Glick and Planned Parenthood of Washoe County per docket*

11

Tanya McDougall-Johnson
Registered Agent for
Planned Parenthood Mar Monte, Inc.

12

455 West Fifth St., Suite D-2.,
Reno, NV 89503

13

Tel: (775) 321-8711

14

*Successor in Interest to Plaintiff Planned Parenthood of Washoe County*
(by certified mail only, no email address)

15

16

17

***Defendants' Counsel and Defendant Successors in Interest***

18

Aaron D. Ford

19

Nevada Attorney General
Office of the Attorney General

20

100 North Carson Street
Carson City, NV 89701

21

Tel: (775) 684-1100

22

adford@ag.nv.gov

23

*Defendant Successor in Office and Counsel for Original District Attorney Defendants per docket*

24

Arthur E. Mallory

25

Churchill County District Attorney
165 North Ada Street

26

Fallon, NV 89406
Tel: (775) 423-6561

27

amallory@churchillda.org
*Defendant Successor in Office*

28

Steven Wolfson
Clark County District Attorney
P.O. Box 552212
Las Vegas, NV 89155
Tel: (702) 671-0978
steven.wolfson@clarkcountyda.com
*Defendant Successor in Office*

Mark B. Jackson
Douglas County District Attorney
P.O. Box 218
Minden, NV 89423
Tel: (775) 782-9800
mjackson@douglas.nv.gov
*Defendant Successor in Office*

Tyler Ingram
Elko County District Attorney
540 Court Street, 2nd Floor
Elko, NV 89801
Tel: (775) 738-3101
tingram@elkocountynv.net
*Defendant Successor in Office*

Robert E. Glennen, III
Esmeralda County District Attorney
P.O. Box 339
Goldfield, NV 89013
Tel: (775) 485-6352
escodaoffice@gmail.com
*Defendant Successor in Office*

Theodore Beutel
Eureka County District Attorney
701 South Main Street
Eureka, NV 89316
Tel: (775) 237-5315
tbeutel@eurekacountynv.gov
*Defendant Successor in Office*

Kevin Pasquale
Humboldt County District Attorney
P.O. Box 909
Winnemucca, NV 89445
Tel: (775) 623-6360
kevin.pasquale@humboldtcountynv.gov
*Defendant Successor in Office*

William E. Schaeffer
Lander County District Attorney
P.O. Box 187
Battle Mountain, NV 89820
Tel: (775) 635-5195
districtattorney@landercountynv.org
*Defendant Successor in Office*

Bryce R. Shields
Pershing County District Attorney
P.O. Box 299
Lovelock, NV 89419-0299
Tel: (775) 273-2613
bshields@pershingcountynv.gov
*Defendant Successor in Office*

Dylan V. Frehner
Lincoln County District Attorney
P.O. Box 60
Pioche, NV 89043
Tel: (775) 962-8073
dfrehner@lincolncountynv.gov
*Defendant Successor in Office*

Anne Langer
Storey County District Attorney
P.O. Box 496
Virginia City, NV 89440
Tel: (775) 847-0964
alanger@storeycounty.org
*Defendant Successor in Office*

Stephen B. Rye
Lyon County District Attorney
31 S. Main Street
Yerington, NV 89447
Tel: (775) 463-6511
srye@lyon-county.org
*Defendant Successor in Office*

Christopher J. Hicks
Washoe County District Attorney
P.O. Box 11130
Reno, NV 89520
Tel: (775) 328-3220
chicks@da.washoecounty.gov
*Defendant Successor in Office*

T. Jaren Stanton
Mineral County District Attorney
P.O. Box 1210
Hawthorne, NV 89415
Tel: (775) 945-3636
jstanton@mineralcountynv.org
*Defendant Successor in Office*

James S. Beecher
White Pine County District Attorney
1786 Great Basin Blvd., Suite 4
Ely, NV 89301
Tel: (775) 293-6565
JBeecher@whitepinecountynv.gov
*Defendant Successor in Office*

Brian T. Kunzi
Nye County District Attorney
1520 E. Basin Ave., Suite 107
Pahrump, NV 89060
Tel: (775) 751-7080
btkunzi@nyecountynv.gov
*Defendant Successor in Office*

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

/s/ Emily C. Mimnaugh

Emily C. Mimnaugh (NV Bar #15287)
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone: (916) 857-6900
Fax: (916) 857-6902
Email: emimnaugh@pji.org
*Designated Resident Nevada Counsel for Moving Defendants*