1
2
3                      UNITED STATES DISTRICT COURT
4                         DISTRICT OF NEVADA
5

6   Planned Parenthood Monte Mar, Inc.       Case No. 3:85-cv-00331-ART-CSD

7                    Plaintiff,              ORDER ON DEFENDANTS' MOTION
                                             FOR RELIEF FROM JUDGMENT
8          vs.                                     (ECF No. 83)

9   Aaron Ford, in his capacity as Nevada
    Attorney General, *et al.*,
10
11                   Defendants.

12          This case concerns federal constitutional challenges to Senate Bill 510 ("SB

13   510"), a 1985 Nevada law that requires parental notification or judicial bypass of

14   that notification requirement before a physician can perform an abortion on a

15   minor patient. In 1991, this Court permanently enjoined provisions of SB 510,

16   which never took effect. (ECF Nos. 74; 75.) After the Supreme Court's decision in

17   *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), substitute

18   Defendants moved to lift that permanent injunction, which substitute Plaintiff

19   opposes. Plaintiff argues that, even if Defendants are entitled to relief due to

20   *Dobbs*, the relevant statutory provisions must be enjoined on alternative

21   constitutional grounds.

22          For the reasons discussed below, the Court finds that Defendants' motion

23   is meritorious based on *Dobbs*. Therefore, the injunction should be lifted unless

24   the 1985 law should be enjoined on an alternative constitutional ground. While

25   Plaintiff's alternative constitutional grounds may justify injunctive relief, those

26   claims have not been presented in a manner that would permit the Court on the

27   existing record to maintain the injunction on a temporary or permanent basis.

28   Accordingly, the Court grants Defendants' motion for relief from the judgment

entered in this case. The injunction will be lifted, and the statutory provisions at issue may be enforced beginning April 30, 2025. Plaintiff is granted leave to file appropriate motions.

## I.   Background

In 1985, the Nevada legislature enacted SB 510, which amended NRS Chapter 442 to add provisions that never went into effect: NRS 442.255, which requires parental notification before a physician can perform an abortion on a minor and provides for a judicial bypass procedure, and NRS 422.2555, which provides for an appeal procedure.  An existing provision, NRS 442.257, imposes criminal penalties for violations of the abortion regulations contained in Chapter 442.

The relevant provisions of NRS Chapter 442 are as follows. NRS 442.255 prohibits performing an abortion on a minor patient without first notifying the minor's parent or guardian and provides that a minor may seek an order from a state district court authorizing an abortion without parental notification:

> **NRS 442.255 Notice to custodial parent or guardian; request for authorization for abortion; rules of civil procedure inapplicable.**
>
> 1.   Unless in the judgment of the attending physician an abortion is immediately necessary to preserve the patient's life or health or an abortion is authorized pursuant to subsection 2 or NRS 442.2555, a physician shall not knowingly perform or induce an abortion upon an unmarried and unemancipated woman who is under the age of 18 years unless a custodial parent or guardian of the woman is personally notified before the abortion. If the custodial parent or guardian cannot be so notified after a reasonable effort, the physician shall delay performing the abortion until the physician has notified the parent or guardian by certified mail at the last known address of the parent or guardian.
>
> 2.   An unmarried or unemancipated woman who is under the age of 18 years may request a district court to issue an order authorizing an abortion. If so requested,

the court shall interview the woman at the earliest practicable time, which must be not more than 2 judicial days after the request is made. If the court determines, from any information provided by the woman and any other evidence that the court may require, that:

(a) She is mature enough to make an intelligent and informed decision concerning the abortion;

(b) She is financially independent or is emancipated; or

(c) The notice required by subsection 1 would be detrimental to her best interests, the court shall issue an order within 1 judicial day after the interview authorizing a physician to perform the abortion in accordance with the provisions of NRS 442.240 to 442.270, inclusive.

3.  If the court does not find sufficient grounds to authorize a physician to perform the abortion, it shall enter an order to that effect within 1 judicial day after the interview. If the court does not enter an order either authorizing or denying the performance of the abortion within 1 judicial day after the interview, authorization shall be deemed to have been granted.

4.  The court shall take the necessary steps to ensure that the interview and any other proceedings held pursuant to this subsection or NRS 442.2555 are confidential. The rules of civil procedure do not apply to any action taken pursuant to this subsection.

NRS 442.2555 provides that a minor whose request under 442.255 is denied may file a petition with the district court, be heard at a hearing and represented by counsel, and appeal the outcome of that decision:

**NRS 442.2555 Procedure if district court denies request for authorization for abortion: Petition; hearing on merits; appeal.**

1.  If the order is denied pursuant to NRS 442.255, the court shall, upon request by the minor if it appears that she is unable to employ counsel, appoint an attorney to represent her in the preparation of a petition, a hearing on the merits of the petition, and on an appeal, if

3

necessary. The compensation and expenses of the attorney are a charge against the county as provided in the following schedule:

(a) For consultation, research and other time reasonably spent on the matter, except court appearances, $20 per hour.

(b) For court appearances, $30 per hour.

2.   The petition must set forth the initials of the minor, the age of the minor, the estimated number of weeks elapsed from the probable time of conception, and whether maturity, emancipation, notification detrimental to the minor's best interests or a combination thereof are relied upon in avoidance of the notification required by NRS 442.255. The petition must be initialed by the minor.

3.   A hearing on the merits of the petition, on the record, must be held as soon as possible and within 5 judicial days after the filing of the petition. At the hearing the court shall hear evidence relating to:

(a) The minor's emotional development, maturity, intellect and understanding;

(b) The minor's degree of financial independence and degree of emancipation from parental authority;

(c) The minor's best interests relative to parental involvement in the decision whether to undergo an abortion; and

(d) Any other evidence that the court may find useful in determining whether the minor is entitled to avoid parental notification.

4.   In the decree, the court shall, for good cause:

(a) Grant the petition, and give judicial authorization to permit a physician to perform an abortion without the notification required in NRS 442.255; or

(b) Deny the petition, setting forth the grounds on which the petition is denied.

> 5.   An appeal from an order issued under subsection 4 may be taken to the appellate court of competent jurisdiction pursuant to the rules fixed by the Supreme Court pursuant to Section 4 of Article 6 of the Nevada Constitution, which shall suspend the Nevada Rules of Appellate Procedure pursuant to NRAP 2 to provide for an expedited appeal. The notice of intent to appeal must be given within 1 judicial day after the issuance of the order. The record on appeal must be perfected within 5 judicial days after the filing of the notice of appeal and transmitted to the appellate court of competent jurisdiction pursuant to the rules fixed by the Supreme Court. The appellate court of competent jurisdiction shall, by court order or rule, provide for a confidential and expedited appellate review of cases appealed under this section.

NRS 442.257 provides for a criminal penalty for violation of the state's abortion regulations contained in Chapter 442:

> **NRS 442.257 Criminal penalty.** Any person who violates any provision of NRS 442.252 to 442.256, inclusive, is guilty of a misdemeanor.

SB 510 was set to go into effect on July 1, 1985. On June 28 of that year, Physician Eugene Glick and Planned Parenthood of Washoe County filed this lawsuit (then captioned "*Glick v. McKay*") seeking to enjoin enforcement of SB 510. (ECF No. 1.) In their complaint, Plaintiffs argued that the provisions of NRS Chapter 442 amended by SB 510 were unconstitutional because they violated both physicians' and patients' Fourteenth Amendment due process rights, violated the Equal Protection Clause by singling out the regulation of abortion procedures and discriminating between married or emancipated minor women and unmarried and unemancipated minor women, and violated physicians' free speech rights under the First Amendment. (*Id.*) Plaintiffs also moved for a temporary restraining order and preliminary injunction preventing the enforcement of SB 510. (ECF Nos. 2; 5.) The Court granted the motion for a

1    temporary restraining order and held a hearing on the motion for a preliminary

2    injunction. (ECF Nos. 6 at 2; 22 at 3.)

3        In their motion for a preliminary injunction, Plaintiffs argued that the law

4    was constitutionally deficient in several respects. As relevant here, Plaintiffs

5    argued: first, that the statute failed to provide for expedited and confidential

6    appellate review; second, that the judicial bypass process unconstitutionally

7    burdened a patient's right to seek an abortion by failing to provide for anonymity,

8    failing to provide procedures for accessing the court process, and failing to

9    provide for the appointment of counsel during the initial stages of the bypass

10   procedure; and third, that the judicial bypass procedure set forth an

11   unconstitutional standard for a court to determine whether to authorize an

12   abortion. (ECF No. 2.)

13       On July 17, 1985, the Court granted the preliminary injunction, and

14   enjoined enforcement of NRS 442.255(1), (2), (3) and (4), NRS 442.257, and

15   Section 2 of SB 510 (NRS 442.2555). *Glick v. McKay*, 616 F. Supp. 322 (D. Nev.

16   1985). The Court held that Plaintiffs raised serious questions about the

17   constitutionality of these provisions because the judicial bypass procedure failed

18   to set forth any time frame in which a district court must issue a decision when

19   a minor petitions the court after being denied a court order at the interview stage,

20   and because the statute failed to ensure adequate confidentiality. *Id.* at 325–27.

21   The Court made this finding based on *Roe v. Wade*, 410 U.S. 113 (1973) and its

22   progeny, which recognized a constitutional right to abortion. *Id.* at 324.

23       Defendants appealed to the Ninth Circuit, which affirmed the Court's order

24   enjoining these provisions on slightly different grounds. *Glick v. McKay*, 937 F.2d

25   434 (9th Cir. 1991). The Ninth Circuit held that the statute did not satisfy the

26   four factors used in *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502

27   (1990) to determine whether a parental notification requirement had a

28   constitutionally adequate judicial bypass procedure for two reasons: first, it set

6

forth an unconstitutional standard for a court to use in determining whether to grant authorization for an abortion; and second, it failed to provide for expedient review. *Id.* at 438–41 (citing the factors identified in *Bellotti v. Baird*, 443 U.S. 622 (1979)). The Ninth Circuit's decision was also based on the constitutional right to abortion under *Roe* and its progeny. *Id.* at 442 (citing *Roe*, 410 U.S. at 147–64).

Shortly thereafter, the Nevada Attorney General announced publicly that the State would not appeal the Ninth Circuit's decision. (ECF No. 68.) Plaintiffs then filed a motion for summary judgment based on the Ninth Circuit's decision upholding the preliminary injunction. (*Id.*) The Court entered judgment on October 10, 1991, in favor of Plaintiffs and against Defendants, "1. Declaring that NRS 442.255 and NRS 442.2555 are unconstitutional; and, 2. Permanently enjoining enforcement of NRS 442.255, NRS 442.2555, and NRS 442.257." (ECF Nos. 74; 75.)

As a result, NRS 442.255 and NRS 442.2555 never went into effect and were never enforced.

Thirty-eight years after the complaint in this case was filed, on December 1, 2023, Defendants filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60 requesting that the Court grant relief from the October 10, 1991 injunction. (ECF No. 83.) New parties were substituted and agreed to a briefing schedule on Defendants' motion.[1] (ECF No. 112.) A hearing on the motion was held on October 29, 2024. After the hearing, the Court ordered the parties to submit supplemental briefing regarding alternative constitutional grounds asserted to justify a continued injunction. (ECF No. 126.) The Court now considers Defendants' motion.

---

[1] Current officeholders were automatically substituted as Defendants in this action pursuant to Federal Rule of Civil Procedure 25(d). Planned Parenthood Monte Mar was substituted as the Plaintiff in this case, as Dr. Eugene Glick is now deceased and Planned Parenthood of Washoe County is now defunct. (ECF No. 105.)

## II.    Rule 60(b) Relief from Final Judgment

Defendants seek relief from the 1991 permanent injunction under Rule 60(b)(5), arguing that the Ninth Circuit's decision in *Glick*, which formed the basis for the injunction, was both wrongly decided and overruled by *Dobbs*, 597 U.S. 215. Plaintiff asserts that Defendants' motion is untimely and fails to meet the standard for relief from judgment under Rule 60(b)(5). The Court first addresses whether Defendants' motion is timely, then considers whether either the "inequity" or "prior judgment" prong of Rule 60(b)(5) applies, outlines the appropriate standard under the inequity prong, and finally analyzes whether Defendants have met the standard for relief from judgment. The Court also considers whether the statute should be enjoined on alternative constitutional grounds.

### A.    Legal Standard

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons. . . ." Pertinent to the motion before the Court, a court may grant relief when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable. . . ." Fed. R. Civ. P. 60(b)(5).

### B.    Defendants' Argument that *Dobbs* overruled *Glick*

Defendants argue that the Supreme Court's holding in *Dobbs* eliminated the legal basis for the 1991 judgment and injunction. 597 U.S. 215. The Ninth Circuit's decision in *Glick* held the judicial bypass procedures codified in NRS 442.255 and 442.2555 unconstitutional under *Roe* and its progeny, which recognized a substantive due process right to an abortion under the United States Constitution. 937 F.2d at 441. The Supreme Court in *Dobbs* held that no substantive right to an abortion is provided by the United States Constitution. 597 U.S. 215 at 231 ("We hold that *Roe* and *Casey* must be overruled. The

8

Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision . . . ."). This Court granted summary judgment to Plaintiffs and permanently enjoined the Nevada judicial bypass procedures in 1991 based on the Ninth Circuit's decision in *Glick.* (ECF Nos. 68; 74.) It follows that the judgment in this case was based upon the law of *Roe*, which is now overruled.

Because the Court finds that relief is warranted under the argument that the Ninth Circuit's decision in *Glick* was overruled by *Dobbs*, the Court does not address Defendants' other arguments for relief.

### 1. Defendants' Motion is Timely

Plaintiff first argues that Defendants' motion is untimely. A party must bring a motion for relief under Rule 60(b)(5) within "a reasonable time." Fed. R. Civ. P. 60(c)(1). When a Rule 60(b) motion is based on a change in law, timeliness is measured "as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment." *Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir 2020) (internal quotation marks omitted). The Supreme Court issued its decision in *Dobbs* on June 24, 2022. 597 U.S. 215. Defendants filed their Rule 60(b) motion on December 1, 2023, approximately seventeen months after the *Dobbs* decision was issued. Plaintiff argues that seventeen months is not a reasonable time.

"What constitutes reasonable time depends on the facts of each case." *United States. v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985) (discussing the timeliness of Rule 60(b)(5) motions). In looking at the facts, a court should consider "the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam).

Plaintiff focuses on the second and third factors, arguing that Defendants have failed to explain the reason for the seventeen-month delay in bringing their

motion although they were aware of the holding in *Dobbs*. Defendants respond that they acted diligently after the *Dobbs* decision, but the complications of this case—acquisition of the record not available online and issues of succession of interest—made their delay reasonable. Defendants also argue that in cases considering the timeliness of motions for relief from a prospective injunction, courts exercise leniency in the reasonable time analysis, especially if there is no prejudice to the opposing party. *See Holtzman*, 762 F.2d at 725 (five-year delay was reasonable in seeking relief from permanent injunction); *Associated Builders & Contractors v. Mich. Dept. of Lab. and Econ. Growth*, 543 F.3d 275, 278–79 (6th Cir. 2008) (delay of two or more years was reasonable in seeking relief from permanent junction).

In *Holtzman,* the Ninth Circuit held that "leniency [] is appropriate when the challenged judgment is prospective." 762 F.2d at 725. Defendant Holtzman sought relief five years after entry of a judgment which permanently enjoined him from importing and selling certain cars in violation of the Clean Air Act. *Id.* at 723. Holtzman argued that his delay should be excused because it was based on erroneous but not unreasonable interpretations of the injunction and the district judge's decision. *Id.* at 725. The Ninth Circuit held that "[a]lthough these judgment errors might not suffice to excuse a person under different circumstances, they excuse [defendant] because the government was not prejudiced by his errors and because the prospective nature of the injunction calls for leniency in interpreting the reasonable time requirement." *Id.*

The Sixth Circuit took a similar approach in *Associated Builders*, finding a years-long delay reasonable after a change in the law. 543 F.3d at 278–79. There, the State of Michigan filed a motion for relief under Rule 60(b)(5), arguing that Supreme Court precedent had eliminated the basis of an injunction issued fourteen years earlier. *Id.* at 277. The Sixth Circuit held that regardless of when the change in law had occurred—the parties disputed whether this was either

two or nine years prior—the fact remained that the law had changed to permit what was once illegal. *Id.* at 278. The court noted that, while the State could have responded more quickly to these changes in law, practical reasons excused the delay and the opposing party had not demonstrated that they were prejudiced by the delay in any way. *Id.* at 279. Rather, "[t]he lapse in time gave the association and its members more time to be free of these allegedly burdensome regulations." *Id.*

Both *Holtzman* and *Associated Builders* suggest that when relief is sought from a prospective judgment and the delay caused no prejudice to the opposing party, the length and reason for the delay are less important. Even outside of the context of a prospective judgment, the Ninth Circuit has found delays of between eight months and two years to be reasonable where there was no prejudice to the nonmovant. *See In re Cisneros*, 994 F.2d 1462, 1467 (9th Cir. 1993) (eight-month, non-prejudicial delay was reasonable for motion under 60(b)(1)); *In re Int'l. Fibercom, Inc.*, 503 F.3d 933, 946 (9th Cir. 2007) (two year, non-prejudicial delay was reasonable for motion under 60(b)(6)); *In re Pac. Far E. Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989) (eighteen-month, non-prejudicial delay was reasonable for motion under 60(b)(6)).

The interest in finality factor is also less important when a Rule 60(b)(5) motion seeks relief from a prospective injunction. As the court explained in *Holtzman*, "[a]lthough we are not unmindful of the strong policy in favor of finality . . . the specific facts in this case support our holding that [defendant] brought his rule 60(b)(5)[] motion[] within a reasonable time." 762 F.2d at 725. The analysis in *Holtzman* suggests that interests in finality have little weight when a defendant seeks relief from a prospective injunction and there is no prejudice to the opposing party. *See id.* Additionally, the Sixth Circuit's reasonable time analysis in *Associated Builders* did not address the "interests in finality" factor. *See* 543 F.3d at 278 (considerations include length of delay, explanation for delay,

prejudice to the opposing party, and circumstances warranting relief, as well as whether the dispute is a matter of public interest or merely of private concern).

With these considerations in mind, the Court analyzes each of the four factors.

### a. Prejudice to Plaintiff

Here, Plaintiff has not pointed to any prejudice caused by the delay. Rather, it has continued to benefit from the injunction's continuation during this period. *See id.*, 543 F.3d at 279. As such, the Court finds that this factor weighs in favor of timeliness. *See Holtzman*, 762 F.2d at 725; *Cisneros*, 994 F.2d at 1467; *Fibercom*, 503 F.3d at 946.

### b. Reason for Delay and Ability to Learn Earlier of Grounds

Although Plaintiff argues that the seventeen-month delay here was unreasonable, none of the cases cited by Plaintiff address the reasonable time analysis in the context of a motion for relief from a prospective injunction, where the party moving for relief is entitled to more leniency.

Plaintiff cites to case law finding Rule 60(b) motions untimely where the delay was unexplained.[2] Plaintiff also points to case law finding such motions untimely where the parties failed to appeal, bring arguments during litigation, or otherwise prosecute the case.[3] However, none of these circumstances are present

---

[2] *Morton v. Twitter, Inc.*, No. 23-55732, 2024 WL 2843031, at *1 (9th Cir. June 5, 2024) (memorandum opinion) (failure to explain delay counseled against finding of reasonable time); *Franklin v. Tate*, No. 1:19-cv-01170-AWI-SAB, 2022 WL 17406094, at *3 (E.D. Cal. Dec. 2, 2022) (no explanation for delay favored a finding that motion was untimely).

[3] *Perry v. San Diego Cnty.*, 670 F. App'x 599, 600 (9th Cir. 2016) (affirming denial of Rule 60(b) motion where plaintiff did not appeal district court judgment and "presented no reason for the nearly three-year delay in filing his motion"); *Batman v. Perez*, No. 20-CV-2298, 2022 WL 17330466, at *5 (S.D. Cal. Nov. 29, 2022) (delay unreasonable where plaintiff's reason for delay did not constitute excusable neglect and plaintiff could have made other attempts during litigation to save case from dismissal); *Levy v. United States*, No. 22-CV-05009-JSC, 2023 WL 5599608, at *3 (N.D. Cal. Aug. 28, 2023) (delay in filing rule 60(b)(1) motion

here. Finally, Plaintiff points to case law where courts found untimely Rule 60(b) motions filed months after the issuance of Supreme Court or Circuit Court precedent which formed the basis of the motion, which is the case here.[4] But none of these cases involve a prospective injunction where, as explained above, the length and reason for delay are less important. *See Holtzman*, 762 F.2d at 725; *Associated Builders*, 543 F.3d at 278–79.

Here, Defendants have proffered an explanation for their seventeen-month delay, namely the challenge of coordinating with successor parties and accessing the archived record of a case that was closed in 1991. The Court finds that, while Defendants could have brought this motion sooner, they are entitled to leniency because they seek relief from a prospective injunction and Plaintiff has not argued that they were prejudiced by the delay. Accordingly, the Court finds that the second and third factors weigh in favor of Defendants' motion being timely.

### c. Interests in Finality

As discussed above, this factor also bears little weight when relief is sought from a prospective injunction and there is no prejudice to the opposing party. Like in *Holtzman* and *Associated Builders*, the fact that Defendants seek relief

---

was unreasonable where plaintiff's case was dismissed for failure to prosecute and plaintiff had repeatedly failed to comply with court deadlines); *United States v. Hughes*, No. 18-CV-05931-JCS, 2024 WL 1056002, at *2 (N.D. Cal. Mar. 11, 2024) (delay unreasonable where party could have made argument during litigation but failed to); *Zamora v. Wells Fargo Bank, N.A.*, No. 13-CV-00134-MEJ, 2014 WL 2093763, *3–4 (N.D. Cal. May 19, 2014) (delay in bringing 60(b)(1) motion was unreasonable where plaintiff failed to provide an explanation for the delay or oppose the motion to dismiss).

[4] *See Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (affirming denial of motion for relief from judgment under Rule 60(b)(6) after a change in law based on an unexcused, eight-month delay); *Nat'l Org. for Women v. Operation Rescue*, 47 F.3d 667, 668–69 (4th Cir. 1995) (affirming, after a change in law, denial of motion for relief for attorney fees portion of the judgment based on an unexcused delay of over one year); *Fyk v. Facebook, Inc.*, No. 21-16997, 2022 WL 10964766, at *1 (9th Cir. Oct. 19, 2022) (memorandum opinion) (affirming denial of motion for relief from judgment based on an unexcused nine-month delay when legal issue could have been raised before appeals court ruling).

from an injunction because its basis has been overruled means that any party's interests in the finality of this judgment do not bear heavily on this analysis. 762 F.2d at 725; 543 F.3d at 278–79. Accordingly, this factor also weighs in favor of a finding of timeliness.

Considering the reasonable time factors (prejudice, reason for the delay, ability to learn earlier of grounds for relief, and finality), Defendants' motion is timely. Because there is no prejudice to the opposing party and relief is sought from a prospective injunction, the other three factors have less importance. *Holtzman*, 762 F.2d at 725. The Court finds that filing the instant motion seventeen months after the *Dobbs* decision was reasonable.

### 2. Rule 60(b)(5) Inequity Prong Governs this Motion

Although the parties do not dispute that subsection (b)(5) of Rule 60 applies to Defendants' argument that *Dobbs* eliminated the legal basis for the permanent injunction in this case, they dispute which "prong" of subsection (b)(5) applies. Rule 60(b)(5) provides, in relevant part, that relief from a judgment may be warranted if it is "based on an earlier judgment that has been reversed or vacated," or "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

Defendants argue that this motion falls under the "inequity prong" of Rule 60(b)(5), because "applying it prospectively is no longer equitable." *Id.* This prong "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). Both the Supreme Court and the Ninth Circuit have analyzed 60(b)(5) motions under the inequity prong where an unrelated proceeding resulted in a significant change in law related to the legal basis for prospective relief. *See Rufo*, 502 U.S. at 383–84, 388 (evaluating Rule 60(b)(5)

14

motion to modify consent decree based on change in law from unrelated proceeding under inequity prong); *Agostini v. Felton*, 521 U.S. 203, 215, 237 (1997) (analyzing Rule 60(b)(5) motion for relief from permanent injunction based on change in underlying law under inequity prong); *California by and through Becerra v. EPA*, 978 F.3d 708, 713, 717 (9th Cir. 2020) (same).

Plaintiff counters that Defendants' motion instead should be evaluated under the "prior judgment prong" of 60(b)(5), which permits relief from judgment when "it is based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). Plaintiff argues that Defendants cannot obtain relief under the prior judgment prong because the application of that prong is limited to "a judgment based on a prior judgment reversed or otherwise vacated—based in the sense of res judicata, or collateral estoppel, or somehow part of the same proceeding." *Tomlin v. McDaniel*, 865 F.2d 209, 210–11 (9th Cir. 1989), *overruling on other grounds recognized by Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009); 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2863 (3d ed. 2024) (prior judgment prong "does not apply merely because a case relied on as precedent by the court in rendering the present judgment has since been reversed"). Though Plaintiff is correct that Defendants cannot obtain relief under the prior judgment prong because *Dobbs* is an unrelated proceeding, Defendants bring their motion under the inequity prong.

For this reason, Plaintiff's citation to *MKB Management Corp. v. Wrigley*, 343 F.R.D. 68 (D.N.D. 2022) is unpersuasive. *MKB* is a post-*Dobbs* decision in which the Attorney General of North Dakota filed a motion for relief under Rule 60(b)(5), asking the court to lift a permanent injunction that enjoined a state law banning abortions when a "heartbeat" was detected. *Id.* at 69. Although the Attorney General sought relief under the prior judgment and inequity prongs, the court in *MKB* opined only on the prior judgment prong. *Id.* at 70; Motion and Brief in Support of Motion to Reopen Case, *MKB Management Corp et al. v.*

*Burdick et al.*, No. 1:13-cv-00071 (D.N.D. Sept. 29, 22), ECF No. 132-2. *MKB* therefore does not provide guidance as to whether the change in law created by *Dobbs* justifies relief under the inequity prong, as Defendants argue here. *See MKB*, 343 F.R.D. at 70–71.

In conclusion, the Court agrees with Defendants that this motion is properly evaluated under the inequity prong of Rule 60(b)(5). This decision conforms with that of another district court addressing a similar issue. Relying on the Ninth Circuit's decision in *Becerra*, a district court in Louisiana evaluated a Rule 60(b)(5) motion based on the change in law created by *Dobbs* under the inequity prong. *June Med. Servs. LLC v. Phillips*, 640 F. Supp. 3d 523, 533, 537–39 (M.D. La. 2022) (analyzing motion for relief from a prior judgment which enjoined enforcement of an admitting privileges law under *Roe* under inequity prong). Accordingly, the Court next addresses the appropriate standard for relief under the Rule 60(b)(5) inequity prong.

### 3. Standard for Relief under Rule 60(b)(5) Inequity Prong

To be entitled to relief under the inequity prong, Defendants must show that "applying [the injunction] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The parties dispute what standard the Court should apply for determining the merits of Defendants' motion.

Motions seeking relief from judgment under the inequity prong are evaluated differently depending on the nature of the changed circumstances and the judgment at issue. *Compare Becerra*, 978 F.3d 708, *with Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021). Here, Plaintiff argues that courts must weigh certain equitable factors in deciding whether to grant relief, which requires Defendants to show that changed circumstances "make compliance with the [judgment] substantially more onerous," "unworkable," or "detrimental to the public interest." *Rousseau*, 985 F.3d at 1097–98 (citing *Rufo*, 502 U.S. at 384). Plaintiff maintains that Defendants have failed to explain how the change in law

under *Dobbs* satisfies this standard. Defendants argue that a court must modify an injunction when the law "changes to permit what was previously forbidden" without regard to those equitable factors. *Becerra*, 978 F.3d at 714 (citing *Agostini*, 521 U.S. at 215–17).

For the reasons outlined below, Defendants are correct. Because this case involves a change in the law underlying the 1991 injunction, as opposed to a change in factual circumstances, the Court does not consider equitable factors in evaluating Defendants' motion for relief.

### a. Equitable Factors Apply to Changes in Factual Circumstances

Plaintiff argues that courts must weigh equitable factors in deciding whether to grant a Rule 60(b)(5) motion for relief from judgment. Plaintiff primarily relies on *Rousseau*, in which the Ninth Circuit considered equitable factors in determining whether to modify an injunction, and *Rufo*, in which the Supreme Court considered equitable factors in deciding whether to modify a consent decree. 985 F.3d at 1097–98; 502 U.S. at 384–87. However, both *Rousseau* and *Rufo* were distinct from the case at hand in that they considered equitable factors in determining whether to modify an earlier judgment because of changed factual circumstances.

In *Rousseau*, the Ninth Circuit analyzed a Rule 60(b)(5) motion for relief from a permanent injunction in light of changed factual conditions. 985 F.3d at 1098–99. The court explained, "[i]f the moving party cites significantly changed circumstances, it must also show that the changed conditions make compliance with the consent decree more onerous, unworkable, or detrimental to the public interest." *Id.* at 1097–98 (citing *Rufo,* 502 U.S. at 384). The Ninth Circuit went on to affirm the lower court's modification of the injunction based upon its finding that a change in factual conditions made compliance detrimental to the public interest. *Id.* at 1098–99.

17

As in *Rousseau,* the Supreme Court in *Rufo* considered equitable factors where petitioners sought relief from a consent decree based on changed factual circumstances. In *Rufo,* a county jail moved for relief from a consent decree entered to correct unconstitutional jail conditions on the grounds that there had been a significant change in both factual conditions and in law. 502 U.S. at 371–72, 376. The Court rejected petitioner's argument that a change in law warranted relief, finding that the purported change was a mere clarification of law which did not provide a basis for modification. *Id.* at 388–90. As to petitioner's argument that changed factual circumstances warranted relief, the Court held that modification of a consent decree may be warranted "when changed factual conditions make compliance with the decree substantially more 'onerous', 'unworkable' or 'detrimental to the public interest,'" and remanded the case to the district court to make factual findings. *Id.* at 384.

In sum, *Rousseau* and *Rufo* make clear that courts consider equitable factors, such as whether changed circumstances make compliance more onerous, unworkable, or detrimental to the public interest, when deciding whether to grant relief from judgment in light of changed factual circumstances.

### b. Equitable Factors do not Apply to a Change in Law that Permits the Enjoined Conduct

Defendants argue that courts do not weigh equitable factors when a change in law alters the legal premise for an injunction. The Court agrees. In *Agostini,* the Supreme Court considered a motion for relief from a prospective injunction under Rule 60(b)(5) based on both changed factual and legal circumstances. 521 U.S. at 215–16. After finding that the law had changed significantly such that the case law on which the injunction relied was no longer good law, the Court granted petitioners relief from the injunction without any analysis of equitable factors. *Id.* at 237.

The Ninth Circuit's decision in *Becerra* further confirms this principle. 978

F.3d 708. In *Becerra*, the Ninth Circuit considered a Rule 60(b)(5) motion to modify an injunction based on a change in law which had "dissolved the legal basis" for the injunction. *Id.* at 713. The court stated, "[a]n unbroken line of Supreme Court cases makes clear that it is an abuse of discretion to deny a modification of an injunction after the law underlying the order changes to permit what was previously forbidden." *Id.* at 713–15 (citing *Pennsylviania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421 (1855) ("*Wheeling Bridge*"); *Sys. Fed'n. No. 91, Ry. Emp. Dep't., AFL-CIO v. Wright*, 364 U.S. 642 (1961); *Agostini*, 521 U.S. 203). *Becerra* noted that in both *Wheeling Bridge* and *Agostini*, the Supreme Court relied on the change in law that permitted what had previously been forbidden under the injunction and did not analyze any equitable factors. *Id.* at 714–15 (citing *Wheeling Bridge*, 59 U.S. at 431–32; *Agostini*, 521 U.S. at 215–17). The court also noted that several other circuits have adopted a similar approach. *Id.* at 715.

The Ninth Circuit in *Becerra* entertained and rejected the argument that it was required to weigh equitable factors. The court considered whether it needed to conduct a "broad, fact-intensive inquiry into whether altering an injunction is equitable, even if the legal duty underlying the injunction has disappeared." *Id.* at 715–16 (citing *Rufo*, 502 U.S. 367). The court explained that the analysis of those factors in *Rufo* was in the context of deciding whether to modify a consent decree, a "contract-like judgment that turns on the parties' expectations," and thus required consideration of the parties' expectations in agreeing to the decree. *Id.* at 716. Recognizing that some courts have applied the *Rufo* analysis to injunctions as well as consent decrees, the court then distinguished these cases on the basis that those modification requests were based on changed facts— which require a broader analysis—as opposed to changed law. *Id.* at 716 n.5.[5]

---

[5] The *Becerra* court also rejected the argument that *Bellevue Manor*, a case cited

The *Becerra* court concluded "[w]e therefore hold that when a district court reviews an injunction based solely on law that has since been altered to permit what was previously forbidden, it is an abuse of discretion to refuse to modify the injunction in the light of the changed law." *Id.* at 718–19.

### c. The Change in Law Standard Governs this Motion

This motion is governed by *Becerra* and *Agostini*, which hold that a court must modify an injunction if the law underlying it has been overruled, without consideration of equitable factors. 978 F.3d at 716*;* 521 U.S. at 215–17; *see also* 12 James W. Moore et al., Moore's Federal Practice - Civil § 60.47[2][c] (3d ed. 2025) ("And when no consent decree is involved, a change in the law that permits what was previously forbidden is sufficient by itself to warrant modification of the injunction; the court need not consider other factors such as the balance of harms."). This is the case here. It is also clear from the language of *Rufo* and the court's analysis in *Becerra* that consideration of equitable factors applies when evaluating a request for relief based on changed factual conditions—which is not the case here.[6] 502 U.S. at 384; 978 F.3d at 716–17. And broader consideration

---

by Plaintiff, compelled a different conclusion, because of the unusual circumstances of that case. *Becerra*, 978 F.3d at 716 (citing *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249 (9th Cir. 1999)).

[6] Plaintiff's other citations in support of their argument that *Rousseau* and *Rufo*'s equitable factor analysis applies in all circumstances are distinguishable. Most of the cases cited involved changed factual circumstances. *Or. Advoc. Center v. Allen*, No. 20-35540, 2021 WL 3615536, at *1 (9th Cir. Aug. 16, 2021); *BNSF Ry. Co. v. Tri-City & Olympia R.R. Co., LLC*, No. 2:09-CV-5062-EFS, 2022 WL 2015288, at *5–8 (E.D. Wash. June 6, 2022); *Def. of Wildlife v. Martin*, No. 2:05-CV-00248-RHW, 2021 WL 5890661, at *4 (E.D. Wash. Dec. 13, 2021); *United States v. Turner*, No. 3:13-CV-1827-DMS-NLS, 2022 WL 1570741, at *2 (S.D. Cal. May 17, 2022). Other cases cited by Plaintiff are also distinguishable because the court found no significant change in law. *Planned Parenthood Fed'n. of Am., Inc. v. Ctr. for Med. Progress*, 704 F. Supp. 3d 1027, 1035–37 (N.D. Cal. 2023), *appeal dismissed*, No. 23-4398, 2024 WL 3153369 (9th Cir. May 24, 2024) (citing to *Rufo* and *Rousseau* for 60(b)(5) inequity prong rule but not applying test due to finding that there was no significant change in settled law); *Natl. Abortion Fed'n. v. Center for Med. Progress*, No. 15-CV-03522-WHO, 2024 WL 1286936, at *3–4 (N.D. Cal. Mar. 25, 2024) (same).

of parties' expectations and equities does not apply in the context of a prospective injunction. *Becerra*, 978 F.3d at 716.

This Court is bound by the Ninth Circuit's decision in *Becerra*. Thus, Defendants do not need to show that the decision in *Dobbs* has made the injunction more onerous, unworkable, or detrimental to the public interest. Defendants must only show that continued enforcement would be inequitable because a change in law has eliminated the basis for the. *See id.* at 715–17.[7]

### 4. Defendants are Entitled to Relief Because Continued Enforcement of the 1991 Injunction is Inequitable

There can be no real debate that *Dobbs* overturned *Roe*, on which the Ninth Circuit's decision in this case was premised. *Dobbs*, 597 U.S. at 231; *June Med. Servs.*, 640 F. Supp. 3d at 539. After *Dobbs*, laws regulating abortion are reviewed under a rational basis standard. *Dobbs*, 597 U.S. at 300.

### a. The Nevada Judicial Bypass Provisions Survive Rational Basis Review

The Supreme Court in *Dobbs*, after overruling *Roe*, summarized the standard for rational basis review of abortion regulations:

> It follows that the States may regulate abortion for legitimate reasons, and when such regulations are challenged under the Constitution, courts cannot substitute their social and economic beliefs for the judgment of legislative bodies. That respect for a legislature's judgment applies even when the laws at issue concern matters of great social significance and moral substance.

---

[7] Plaintiff also cites to *Guam Society of Obstetricians and Gynecologists v. Guerrero*, No. CV 90-00013, 2023 WL 2631836 (D. Guam Mar. 24, 2023), where a district court denied a 60(b)(5) motion to vacate an injunction post-*Dobbs*, citing *Rufo*. However, *Guerrero* is distinguishable because the defendants failed to respond to plaintiffs' arguments that the law was void *ab initio* when it was passed because the Guam Legislature lacked legal authority to enact the statute. *Id.* at *1–2. The decision in *Guerrero* was appealed and is pending before the Ninth Circuit.

> A law regulating abortion, like other health and welfare laws, is entitled to a strong presumption of validity. It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests.

*Dobbs*, 597 U.S. at 300–01 (cleaned up).

Nevada's parental notification and judicial bypass scheme withstands rational basis review. Under rational basis review, "[w]e must uphold a law . . . if the government has a legitimate interest in enacting the statute, and the law is rationally related to that interest." *Raidoo v. Moylan*, 75 F.4th 1115, 1121 (9th Cir. 2023). This standard of review is highly deferential. "Indeed, a law survives rational basis review so long as some conceivable legitimate purpose could have supported it—regardless of a legislature's actual purpose in enacting a statute." *Id.*

The parental notification and judicial bypass provisions have twin aims: first, to require notification to parents of a minor's intent to have an abortion procedure; and second, to permit minors for whom notification would not be in their best interest to circumvent the requirement via a court order. Together, these operate to require parental notification in all but those cases where it would not be in a minor's best interest. In the 1985 opposition to Plaintiffs' motion for preliminary injunction, Defendants stated that several important state interests formed the basis of the parental notification provisions of SB 510, which were recognized as legitimate even under *Roe*, namely, an interest in encouraging parental involvement in the decision to have an abortion, and an interest in protecting immature minors and promoting family integrity. (ECF No. 10 at 5–6.) Defendants noted that these interests were seen as legitimate by the Supreme Court. (*Id.*) (citing *City of Akron v. Akron Center for Reprod. Health, Inc.,* 462 U.S. 416, 427 n.10, 443 n.32 (1983), *overruled on other grounds by Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833 (1992) (stating "we have held that

the States have a legitimate interest in encouraging parental involvement in their minor children's decision to have an abortion," and "we have emphasized that a State's interest in protecting immature minors and in promoting family integrity gives it a special interest in ensuring that the abortion decision is made with understanding and after careful deliberation") (citing *H. L. v. Matheson*, 450 U.S. 398, 411 (1981) (parental notice statute served "important considerations of family integrity and protecting adolescents"))).

Nevada's statute is rationally related to the purposes articulated in the 1985 briefing. (*Id*.) The Court notes that "[t]he legislature does not need proof that the statute will achieve its asserted purpose: a statute will pass muster if the purpose of the law rests on 'rational speculation,' even if the speculation is 'unsupported by evidence or empirical data.'" *Raidoo*, 75 F.4th at 1121 (quoting *F.C.C. v. Beach Commc'ns., Inc.*, 508 U.S. 307, 315 (1993)). Regardless of this law's effectiveness in achieving this purpose, it is sufficient that the legislature could reasonably conclude that the law would serve this purpose. *See id*. The legislature could have reasonably concluded that a statute which requires notification to the parents of unemancipated minors of their intent to obtain an abortion would encourage parental involvement in this decision and protect immature minors by encouraging them to speak to their parent or guardian about the decision to have an abortion. The legislature also could have reasonably concluded that the judicial bypass provision would advance the state's interest in the protection of immature minors and the promotion of family integrity because it allows a minor to obtain an abortion without parental notification when that would not be in their best interest. Therefore, Nevada's parental notification statute and judicial bypass scheme pass the low bar of rational basis review under *Dobbs*.[8]

---

[8] In making this determination, the Court does not take any position on Plaintiff's

Because Nevada's parental notification and judicial bypass scheme survive rational basis review, requiring continued compliance with the injunction preventing their enforcement would be inequitable. In *Becerra*, the Ninth Circuit held that "even if an injunction appears to do no harm to the defendant it necessarily does so by its nature." 978 F.3d at 717 (internal quotation omitted). Thus, "compelling [a party], then, to continue to adhere to an injunction based on a legal duty that has since disappeared is a harm in and of itself." *Id.* Requiring compliance with the prospective injunction in this case—the legal basis for which has disappeared under *Dobbs*—would therefore be inequitable.

### b. Lifting the Injunction is Suitably Tailored to the Change in Law

Under *Rufo*, once a party has established that it is entitled to relief due to a change in facts or in law, a court should consider "whether the proposed modification is suitably tailored to the changed circumstances." 502 U.S. at 391. Without directly addressing the suitably tailored analysis, the court in *Becerra* held that a district court "abuses its discretion when it refuses to modify an injunction even after its legal basis has evaporated and new law permits what was previously enjoined." 978 F.3d at 711. Plaintiff argues that lifting the injunction here is not suitably tailored to the changed circumstances, in part because there are other constitutional grounds justifying relief. However, as discussed below, whether the statute is unconstitutional for another reason has not been fully litigated nor is that question properly before the Court in this motion.

### III. Alternative Grounds for Maintaining the Injunction

Concluding that Nevada's parental notification law is no longer unconstitutional under *Roe* and *Glick* does not end the Court's inquiry. Plaintiff

_____

current or potential arguments on other grounds that the statute is unconstitutional.

argues that the Court can, and should, consider three alternative reasons why the statute is unconstitutional in determining whether to lift the injunction, each of which was pled in the original complaint.[9] Plaintiff argues that the statute violates minors' procedural due process rights, is unconstitutionally vague, and violates the Equal Protection Clause. Plaintiff argues that if the statute is unconstitutional on one of these alternative bases, the legal basis for the injunction has not evaporated and the law should remain enjoined. The Court finds that while there may be alternative grounds to enjoin the statutory provisions at issue, the question of whether an injunction on one of these grounds is warranted is not properly before the Court.

The 1991 judgment permanently enjoined the statutory provisions as unconstitutional without specifying any particular ground. (ECF Nos. 74; 75.) At no time did the Court address the procedural due process, vagueness, or equal protection arguments made in the original complaint. In 1985 and 1991 the main constitutional challenge was based on *Roe* and there was no need to reach these alternative constitutional grounds. *See Christopher v. Harbury*, 536 U.S. 403, 417 (2002) (judicial branch has an obligation to avoid deciding constitutional issues needlessly); *Lyng v. N.W. Indian Cemetery Prot. Ass'n,* 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). Because the Court appropriately did not address these alternative constitutional grounds in 1985 or 1991, these grounds have not been litigated on the merits.

Because the parties' briefing at this stage focused on Defendants' motion

---

[9] Plaintiff also asserts that the statute may violate the Nevada Constitution or state laws. As Plaintiff notes, because a federal court cannot enjoin a state actor based on state law, the Court does not consider these arguments. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). These arguments must be brought in state court.

for relief from judgment, the alternative constitutional arguments proffered by Plaintiff have not been presented as independent grounds for injunctive relief. The parties' arguments focus primarily on whether these alternative constitutional grounds are appropriately considered as equitable factors under *Rufo,* 502 U.S. at 384.

Plaintiff points to *Rufo*'s requirement that in determining whether a modification is suitably tailored to the changed circumstance, the modification "must not create or perpetuate a constitutional violation." *Id.* at 391. While Plaintiff opposed Defendants' motion to lift the injunction, it did not seek a preliminary or permanent injunction and instead argued that a motion for such relief would be premature. A permanent injunction is only warranted when a party has succeeded on the merits of their claim, and none of Plaintiff's alternative grounds have been litigated on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394–96 (1981). A preliminary injunction standard would be more apt in this situation. *See id.* If Plaintiff can show that it is entitled to a preliminary injunction on an alternative basis, the Court should issue a preliminary injunction on this basis at the same time as it lifts the permanent injunction on the now-overruled basis. Because Plaintiff has not moved for a preliminary injunction, however, the record before the Court does not support such relief.

In sum, Plaintiff has argued that alternative grounds exist to maintain the injunction but has not moved for injunctive relief on any of these alternative grounds. Plaintiff maintains that it cannot request a preliminary injunction unless and until the existing injunction is lifted. If the injunction is lifted, however, the threat of enforcement becomes a live issue for which Plaintiff may seek relief. While Plaintiff's alternative constitutional grounds may justify injunctive relief, those claims have not been presented in a manner that would permit the Court on the existing record to maintain the injunction on a temporary or permanent basis.

**IV.    The 1991 Injunction Will Be Lifted on April 30, 2025**

Because the Court finds that the basis for the 1991 injunction is no longer applicable law, and the statute survives under the current rational basis standard, the Court grants Defendants' motion for relief under Rule 60(b)(5). The Court therefore vacates the permanent injunction entered in this case.

At oral argument, counsel for Defendants proffered that an implementation period of thirty days would be appropriate before the statutory provisions take effect, as the provisions have never been implemented. Therefore, the Court orders that the injunction will be lifted, and NRS 442.255, 442.2555, and 442.257 may go into effect on April 30, 2025. Plaintiff is granted leave to file appropriate motions during this time if it wishes to do so.

**V.    Conclusion**

It is therefore ordered that Defendants' motion for relief from judgment (ECF No. 83) is GRANTED.

It is further ordered that the permanent injunction entered in this case (ECF Nos. 74; 75) is hereby VACATED as of April 30, 2025.

It is further ordered that NRS 442.255, 442.2555, and 442.257 may go into effect on April 30, 2025.

It is further ordered that Plaintiff is granted leave to file appropriate motions.

Dated this 31st day of March 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE