1  BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
   DANIEL BRAVO, ESQ. (SBN 13078)
2  BRAVO SCHRAGER LLP
   6675 South Tenaya Way, Suite 200
3  Las Vegas, Nevada 89113
   Tele.: (702) 996-1724
4  Email: bradley@bravoschrager.com
   Email: daniel@bravoschrager.com
5
   HANNAH SWANSON, ESQ. *(admitted pro hac vice)*
6  PLANNED PARENTHOOD FEDERATION OF AMERICA
   1110 Vermont Ave NW, Suite 300
7  Washington, DC 20005
   Email: hannah.swanson@ppfa.org
8
   VALENTINA De FEX, ESQ. *(admitted pro hac vice)*
9  PLANNED PARENTHOOD FEDERATION OF AMERICA
   123 William Street, Floor 9
10 New York, NY 10038
   Email: valentina.defex@ppfa.org
11 *Attorneys for Plaintiff*

12

## UNITED STATES DISTRICT COURT

13

## DISTRICT OF NEVADA

14

| | |
|---|---|
| 15  Planned Parenthood Mar Monte, | Case No.: 3:85-cv-00331-ART-CSD |
| 16              Plaintiff, | |
| 17        vs. | **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY OF DISTRICT COURT DECISION** |
| 18  Aaron Ford, in his capacity as Nevada Attorney General, et al., | |
| 19 | |
| 20              Defendants | |

21

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

Planned Parenthood Mar Monte ("PPMM") has demonstrated that a stay of this Court's Fed. R. Civ. P. 60(b) ("Rule 60(b)") Order is needed to preserve Nevada's status quo, and the health, wellbeing, and autonomy of young people throughout the pendency of the Ninth Circuit appeal. The District Attorneys' response brief ("Opp'n to Stay") does not undermine this. Absent a stay, pregnant young people seeking abortions will experience significant irreparable harms and impediments to exercising their statutory rights to (1) obtain an abortion, and (2) seek a judicial bypass order allowing them to obtain an abortion without forced parental involvement, due to the lack of functional existing judicial bypass process. The District Attorneys do not rebut these central facts. As to the remaining factors, PPMM has overwhelmingly established that staying the Rule 60(b) Order will not substantially injure the District Attorneys and is supported by the public interest, arguments that the District Attorneys do not meaningfully challenge. As is established by the record and case law, a stay of the order is warranted throughout the pendency of its appellate review.

## ARGUMENT

For forty years, unmarried and unemancipated young people within Nevada have been allowed and trusted to decide for themselves whether to continue a pregnancy or to seek an abortion. Both decisions were allowed to be made without forced parental involvement, without judicial oversight and approval. Because this Court's Rule 60(b) Order, taking effect on April 30, 2025, will disrupt this status quo, all stay factors weigh sharply in favor of granting PPMM's Motion to Stay. The parties agree that four factors govern this inquiry. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors—whether the applicant (1) has made a strong showing of a "likelihood of success" on the merits and (2) will be irreparably harmed absent a stay—are the most critical, and under the Ninth Circuit's "sliding scale" approach, "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). But, the District Attorneys' misapplication of this standard deviates from Ninth Circuit precedent. Nevertheless, the record overwhelmingly supports a finding that all *Nken* factors tip sharply in favor of granting a stay. The legal issues are not as simple as is

claimed; but even if they were, the overwhelming weight of the evidence supports a finding that absent a stay, PPMM, its patients, and providers will suffer irreparable harm. The remaining factors, too, weigh in support of preserving the status quo and staying the Rule 60(b) Decision pending appellate review. The District Attorneys' arguments confirm that PPMM has met its burden in demonstrating that a stay is warranted.

## I.    PPMM Satisfies the First *Nken* Factor: Likelihood of Success

As to the "likelihood of success factor", the merits, record, and the District Attorneys' arguments confirm that PPMM, at minimum, has raised multiple "serious legal questions", easily satisfying the first *Nken* factor in support of a stay of this Court's Rule 60(b) Order. PPMM has established that there are, at minimum, "serious legal questions" as to the merits of the Rule 60(b) decision. *See Las Vegas Sun, Inc. v. Adelson*, No. 2:19-CV-01667-ART-VCF, 2024 WL 3047560 at *1 (D. Nev. June 18, 2024) (finding that the chances of success are not "unreasonable" even when a party is "unlikely to prevail in its appeal" in light of the novelty of the legal question at issue); *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011); *Mohamed v. Uber Technologies,* 115 F.Supp.3d 1024, 1028–29 (N.D. Cal. 2015) (articulating various "serious legal questions" standards); *see also* Mot. to Stay 9–10, ECF No. 137.

Synthesizing various lines of binding precedent, this Court determined that, under Rule 60(b)(5)'s "inequity" provision, the issue of whether equitable and legal factors can be considered depended on the "changed circumstances"[1] alleged and the nature of the underlying challenged judgment, a test that the Ninth Circuit and the United States Supreme Court has never pronounced. PPMM contends that the resolution of that question is more nuanced and not wholly controlled by the holding in *Becerra*. *See* Pls.' Mot. for Stay, 10–13, ECF No. 137 ("Mot. to Stay"). Separately, PPMM maintains that Rule 60(b)(5)'s "suitably tailored" analysis, at minimum, allows consideration of independent constitutional grounds in evaluating whether a requested

---

[1] Undermining their "clarity" argument, the District Attorneys maintain that a reference to "significantly changed circumstances" in case law differs from changes in law, Opp'n to Stay 6 n.4, ECF No. 142. This argument defies Rule 60(b)(5) precedent confirming that this term encompasses factual and legal changes. *See, e.g., Horne v. Flores,* 557 U.S. 433, 448 (2009); *Flores v. Rosen*, 984 F.3d 720, 741 (9th Cir. 2020).

1    modification is proper. *Id.* 12–13. Both, independently, rise to the level of "serious legal

2    questions."

3         The District Attorneys' claim that case law as to whether Rule 60(b)(5) required granting

4    their motion is "clear and well-established,"[2] *see* Resp. in Opp'n to Mot. for Stay ("Opp'n to Stay")

5    2, 4, ECF No. 142, overlooks the record in this case, which establishes that the issues underscoring

6    this inquiry have always been convoluted and complex. Indeed, after oral argument, this Court

7    ordered supplemental briefing due to the complexity of the issues at hand. *See* Order on Suppl.

8    Briefing, ECF No. 126. Furthermore, their current position is contradicted by their previous

9    admissions. In petitioning the Ninth Circuit for relief from the Order on Suppl. Briefing, ECF No.

10   126, the District Attorneys repeatedly categorized as "an issue of first impression," the inquiry set

11   forth in the Court's order, alleging that it "raises new and important problems, or issues of law of

12   first impression". *See* Pet. for Writ of Mandamus to the United States District Ct. for the District

13   of Nevada to Vacate Order & Inj. ("Mandamus Pet.") 3, 14, 21-23, ECF 129-1.[3] And, the District

14   Attorneys do not contest that these arise in an important context: when parties seek to disturb final

15   orders decades after due to changes in the law and the facts. In light of their pre-March 31, 2025

16   admissions, the record in this case, and reasons set forth in the Motion to Stay 9–13, ECF No. 137,

17   this factor weighs in favor of granting a stay.

18   **II.    The Harm to Providers, and Patients Weighs Overwhelmingly in Favor of a Stay**

19        Through arguments and evidence, PPMM has demonstrated that its providers and patients

20   will be irreparably harmed absent the grant of a stay of the Rule 60(b) Order throughout the

21   pendency of the appeal. PPMM has identified numerous irreparable harms that will be experienced

22

23   ───────────────────

[2] Inadvertently, the District Attorneys bolster the existence of "serious questions" by raising a
     corollary issue: whether *Rufo*'s "constitutional violation" mandate is limited to claims procedurally

24   exhausted prior to final judgment. *See* Opp'n to Stay 7–8, ECF No. 142. Whether *Rufo*'s "maintain
     the injunction" language is subject to certain procedural limitations must be reconciled with the

25   Rules 60(b) and (c)(2)'s text, and its practical implications. Their Ninth Circuit Petition for Writ
     of Mandamus concedes that *Rufo*'s procedural limits in an issue of first impression. *See* Mandamus

26   Pet. 21–23, ECF No. 129-1.

27   [3] The Ninth Circuit's denial order did not make any specific findings that would require a
     determination that this was not an "issue of first impression." *See In re Woodbuty [sic] Order*,

28   ECF No. 134.

should the order allowing the enforcement of the parental notification and judicial bypass provisions take effect on April 30, 2025. PPMM has established that (1) no accessible judicial process tangibly exists that would enable an unmarried or unemancipated young person to obtain an abortion without forced parental involvement; (2) there is no evidence as to how the two District Attorneys that filed the Rule 60(b) Motion, the remaining fifteen District Attorneys, or the Nevada Attorney General will enforce NRS 442.255, NRS 442.2555, NRS 442.257 given this procedural vacuum and plain language of the statute; and (3) due to the absence of a process for obtaining a judicial bypass and unclear guidance, PPMM and other abortion providers face a credible threat of arbitrary and discriminatory investigation, prosecution, and civil penalties. *See* Mot. to Stay 13–21, ECF No. 137. The District Attorneys present no evidence or argument to the contrary to rebut these harms.

Nowhere do the District Attorneys acknowledge the most acute irreparable harms: absent a stay, unmarried and unemancipated young people seeking an abortion in Nevada without forced parental involvement or unable to demonstrate "parental notification" will be unable to obtain a judicial bypass order because no accessible process exists to obtain an order. The consequences are indisputable: these young people will be forced to continue to carry an unwanted pregnancy to term that they wish to terminate, necessarily facing the risks and consequences of pregnancy, labor, childbirth, and for some, forced parenthood.[4] The District Attorneys' silence at this juncture as to the effects of the Rule 60(b) Order is at odds with their position in other filings acknowledging that, should Rule 60(b) relief be granted, it will result in delaying and in some cases, thwarting access to abortion services. *See e.g.*, Mandamus Pet. 7, 13, 21, ECF No. 129-1 (emphasizing the need to vacate *Glick* injunction to impede "minor children" from obtaining abortions that they otherwise would have sought). The District Attorneys do not address the factual inexistence of an accessible process and do not refute the irreparable harms that young people will experience if unable to access these processes should the Rule 60(b) Order go into effect.

---

[4] The harm to PPMM's patients and young people subject to these laws is relevant to this inquiry. *See, e.g., Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (considering harm to third parties).

To avoid this inevitable conclusion, the District Attorneys advance a strawman argument that fundamentally mischaracterizes PPMM's arguments, so that an irreparable harm finding would have to be contingent upon a finding that these statutes are constitutionally inadequate. *See, e.g.*, Opp'n to Stay 11–15, ECF No. 142. Confusingly, their "constitutionally adequate" arguments directly contradict their Rule 60(b) merits arguments: each case they cite flowed from *Roe*; yet, their Rule 60(b)(5) motion, at its core, asserted that the legal basis of all *Roe*-related analysis in decisions "evaporated" following *Dobbs*, thus relief was required. Because PPMM did not allege irreparable harm here on the basis of a constitutional violation, these arguments are legally irrelevant and do not rebut evidence in the record. And, absent independent credible evidence to the contrary, the District Attorneys can only advance speculations as to the accessibility of these processes: here, they do not represent the Nevada Judiciary, the remaining defendants or governmental stakeholders responsible for implementing these statutes, and cannot speak with any authority or specificity for those that must comply; they speak only as prosecutors.[5] Accordingly, their representations are insufficient to rebut PPMM's arguments. The effect of a lack of accessible process is irrefutable: the only alternative to abortion will be carrying a pregnancy to term, labor, and childbirth.

PPMM's arguments related to irreparable harms that will be experienced by providers should the Rule 60(b) Order take effect also remain meaningfully unrebutted. While the District Attorneys attempt to obfuscate the issues underlying the *factual* existence of a credible threat of arbitrary enforcement, they do not dispute that this constitutes irreparable harm. *See also* Mot. to Stay 19–21, ECF No. 137 (collecting applicable cases recognizing this harm); *Isaacson v. Mayes*, 84 F.4th 1089, 1100–1101 (9th Cir. 2023) (recognizing a credibility of a threat of prosecution, within the context of standing, when at least one prosecutor indicated a desire to enforce an abortion regulation). Rather, the District Attorneys conjure hypothetical ways that a provider might

---

[5] With respect to the provision that the District Attorneys potentially have legal authority to provide assurances as to preparations within their jurisdictions, NRS 442.2555(1), they shirk their responsibilities related to compensation of appointed counsel by mischaracterizing an indisputable factual unknown as a legal argument. *See* Opp'n to Stay 13, ECF No. 142.

document compliance, Opp'n to Stay 10-11, ECF No. 142, while remaining silent as to whether their bespoke formula, under Nevada state law, can and will be adopted by any of the state's law enforcement apparatus. Critically, the District Attorneys (1) have not pointed to any reliable and binding sources of law setting forth standards/guidance as to how to implement the parental notification requirements   and (2) have not disavowed arbitrary enforcement within their respective jurisdictions through stating on the record themselves as to how they will interpret and enforce the statutes. Indeed, the District Attorneys' *factual* assertions related to the desire to *enforce* these provisions, confirms the existence of this threat. Opp'n to Stay 15, 16, 20, ECF No. 142; *see* Mot. to Stay 19–20, ECF No. 137 (describing threat of enforcement). The District Attorneys remain equally silent as to other credible threats stemming from politicized prosecutions of abortion providers, the possibility of licensure penalties, or other reputational harms. They also cannot disavow arbitrary enforcement in other Nevada jurisdictions that they are not legally authorized to represent. This context is legally significant to this inquiry, whether to grant a stay pending appeal. Simply put, the District Attorneys' efforts to shrug off arbitrary enforcement threats[6] are unavailing. Accordingly, PPMM has clearly established that its providers will face irreparable harm absent the grant of a stay.

Because various forms of irreparable harm established in the record and Motion to Stay remain unrebutted by the District Attorneys' speculations and silence, PPMM has established that its patients and providers will experience irreparable harm absent the grant of a stay pending the Ninth Circuit's decision. Accordingly, this factor weighs heavily in favor of PPMM's motion.

## III.    The Remaining *Nken* Factors Continue to Weigh Heavily In Favor of A Stay

The two remaining factors, the public interest and significant harms experienced by the

---

[6] Illustrating the very point they attempt to refute: "certified mail" only provides a mailing receipt confirming that the item was sent while requiring a signature from the addressee. However, a sender wishing to obtain *proof* of signature must also pay for "Return Receipt" which can be provided by mail or electronically. Thus, while the provider may have sent the notice via certified mail, the District Attorneys do not disavow enforcement should a provider not have requested "return receipt" via paper. Another term alleged to be self explanatory, "last known address," can be equally ambiguous. *See, e.g.,* 26 C.F.R. § 301.6212-2 (regulation defining "last known address"). The District Attorneys point to no binding Nevada legal interpretations that govern any of these terms.

District Attorneys if a stay is granted, continue to weigh heavily in support of PPMM's Motion. *Compare* Mot. to Stay 21–23, ECF No. 137 *with* Opp'n to Stay 15–18, ECF No. 142. While generally these factors may merge when the government is a party, this is not always the case, particularly when there are competing public and governmental interests. *See, e.g.*, *Simon v. City & Cnty. of San Francisco,* No. 24-1025, 2025 WL 1174852, at *21 (9th Cir. Apr. 23, 2025) (recognizing that the public interest can "[cut] both ways"); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (balancing competing governmental interests).

The District Attorneys cannot establish that they will experience significant harms *if a stay is granted*. This legal inquiry considers "whether *issuance* of the stay will substantially injure the other parties interested in the proceeding." *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008) (emphasis added); *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024). The plain language is clear: this factor exclusively examines harm that *will be* experienced by the other party *if* a stay is granted, not harm that an adverse party claims is ongoing. *See Sweet v. Cardona*, 657 F. Supp.3d 1260, 1272 (N.D. Cal. 2023) (rejecting harm that was already ongoing); *Tribe v. U.S. Bureau of Reclamation*, 319 F. Supp. 3d 1168, 1174 (N.D. Cal. 2018); *see also Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019) (denying temporary stay request when the status quo would not be disrupted by continuing to disallow the executive branch from enforcing policy that had never gone into effect). As they concede, no governmental official (including the District Attorneys) has *ever* been allowed to enforce the parental notification and judicial bypass provisions. Opp'n to Stay 16–17, 20, ECF No. 142. Hence, irrespective of whether the "harms" they posit are legally cognizable, they are insufficient to find that this factor weighs against the grant of a stay. Furthermore, the District Attorneys do not identify any other meaningful legally relevant harms that they will experience if a stay of the Rule 60(b) Order is granted. *See* Opp'n to Stay 19, ECF No. 142[7]. There is also no *per se* finding of irreparable harm

---

[7] District Attorneys attempt to rely on *Golden Gate* to support the argument that allowing S.B. 510 to go into effect preserves the status quo. Opp'n to Stay 19, ECF No. 142. Their "judicial intervention" analysis clearly fails under *Golden Gate* because the judicial intervention that PPMM

1    when a government actor is unable to exercise the authority incidental to their office. *C.f.*, *Doe #1*

2    *v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) (rejecting argument that government is entitled to

3    irreparable harm finding simply on the basis that the executive branch was prevented from taking

4    action to effectuate legislative acts); *id*. (internal citations omitted) ("the harm of such a perceived

5    institutional injury is not 'irreparable,' because the government 'may yet pursue and vindicate its

6    interests in the full course of this litigation.'").

7         Addressing their public interest arguments, Opp'n to Stay 15-19, ECF No. 142, any public

8    interest that exists in allowing *them* to enforce the parental notification provision enacted by the

9    legislature equally exists in ensuring that the remainder of the statute is properly implemented.

10    This includes the public interest embedded within the judicial bypass provisions: that young people

11    retain access to abortion via judicial processes set forth in the statute. *See also supra* Section II

12    (addressing lack of existing mechanisms). The District Attorneys' arguments are conspicuously

13    silent, and outweighed by the harm to this public interest that will occur if the Rule 60(b) Order

14    takes effect without the existence and accessibility to this process.

15         Likewise, to the extent that there is a public interest in ensuring that legislative acts enacted

16    take effect, the District Attorneys ignore the public interest in effectuating the State of Nevada's

17    actions, i.e., electoral and legislative actions, *after* 1985, which remain most contemporaneously

18    relevant to the public interest that exists today. *See* Second Suppl. Br. of Pl. Planned Parenthood

19    Mar Monte, Inc. ("Pl.'s Second Suppl. Br.") 24–25, ECF No. 131; Mot. to Stay 22–23, ECF No.

20    137. Further, the District Attorneys' case citations are all distinguishable: the challenged laws in

21    those cases were either very recently passed, reflecting the current will of the legislature, or a law

22    that had already been enforced for over a century, such that denying a stay would maintain the

23

24    seeks to stay pending appellate review is the Rule 60(b) Order, not the *Glick* injunction. Nor does
      *Golden Gate* stand for the proposition that the 'status quo' is determined by *any* judicial
25    intervention in a case. Their reliance on *United States v. Texas* is equally unavailing: the sentence
      accompanying the footnote from which they excise this quote undermines their position: "[The
26    stay's] point is to minimize harm while an appellate court deliberates, so the choice to issue an
      administrative stay reflects a first-blush judgment about the relative consequences of staying the
27    lower court judgment versus allowing it to go into effect." *See* 144 S. Ct. 797, 798 (2024) (Barrett,
      J., concurring).

28

status quo. *See, e.g., Priorities USA v. Nessel*, 860 F. App'x 419, 422 (6th Cir. 2021) (reversing district court's order granting a preliminary injunction barring the enforcement of a law that had been in effect since 1891); *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (Ninth Circuit considered a stay of ballot initiative which had been enacted a year prior, reflecting the current will of the people). But even if enforcing a previously enjoined law constitutes a cognizable public interest, it must be weighed against the public interest in ensuring that this Rule 60(b) appeal is resolved prior to dissolving the final judgment and resuming this litigation. *See Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1223 (D. Utah 2004) (citing *Sperry Corp. v. City of Minneapolis*, 680 F.2d 1234, 1238 (8th Cir. 1982)) (recognizing a public interest in the "prompt and efficient settlement" of disputes as implicated when the consequences would result in a governmental entity "almost certainly [being] thrust back into further litigation, at taxpayers' expense"). Accordingly, the record compels the finding that the public interests advanced by the District Attorneys substantially tip in favor of the grant of a stay.

Separately, the facts of the case dilute the general public interests alleged by the District Attorneys. Little weight should be given to the District Attorneys' assertions of general public interests in light of the abject silence of the remainder of the parties statutorily authorized to enforce this law, including other District Attorneys and state-level law enforcement officials.[8] Likewise, the public interest arguments related to any urgency in enforcing this law are contradicted by the record: the District Attorneys waited over 32 years after the *Glick* injunction, 26 years after *Lambert v. Wicklund*, and 17 months after *Dobbs* to seek any form of Rule 60(b) relief. *See also supra* at n. 10. While this Court found their motion timely, both this Court and the District Attorneys have acknowledged[9] that Rule 60(b) relief could have been sought sooner, undermining the factual assertions related to an ongoing *imminent* need to enforce this law. Order

---

[8] *See* Tr. of Oral Args. 52, ECF 128 ("THE COURT: But you're also making perfectly the argument that Nevada moved on. That they didn't seek similar relief, that they didn't do it back then, they didn't do it along the way, they didn't do it politically, they didn't do it in terms of litigation.").

[9] Tr. of Oral Args. 50–52, ECF No. 128 (District Attorneys' counsel acknowledging other potential opportunities to seek relief prior to the filing of the instant motion).

on Defs.' Mot. for Relief from J. 13, ECF No. 135; *c.f. Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Delay in seeking enforcement of [a party's rights], however, tends to indicate at least a reduced need for such drastic, speedy action").

Lastly, the public interest that allowed this law to survive rational basis review (encouraging parental involvement in the decision to have an abortion,[10] protecting immature minors,[11] and promoting family integrity[12]), do not compel a finding that the public interest weighs against the grant of a stay. *See* Opp'n to Stay 16, ECF No. 142; *see, e.g.*, *Cascadia Wildlands v. Warnack*, 570 F. Supp.3d 983, 992 (D. Or. 2021) (determining that an interest that had been deemed "legitimate" was outweighed by other competing public interests). Likewise, the District Attorneys' abstract[13] public interests are already advanced and protected via existing alternative methods. *See* Pl.'s Second Suppl. Br. 23, ECF No. 131. And in some circumstances, enforcement of this order is contrary to these interests. For example, absent exemptions for young people whose

---

[10] The District Attorneys do not contest that this interest is already advanced by PPMM, *see* Dalton Decl. in Supp. of Mot. to Stay 5, ECF No. 139-1. Other courts have found that most pregnant minors in healthy families already voluntarily do so. *See Am. Acad. of Pediatrics v. Lungren*, 940 P.2d 797, 828–29 (Cal. 1997). Accordingly, this specific public interest does not weigh against granting a stay as the uncontested record demonstrates that this interest will hardly be affected by this stay. But even if this public interest weighs against the grant of a stay, it does not substantially outweigh all other public interests that heavily support the grant of a stay.

[11] Absent an accessible judicial bypass process, giving weight to this interest is at the expense of the public interest in the legislature's intent to ensure that mature minors retain access to abortion without forced parental involvement.

[12] Multiple courts have rejected arguments that parental involvement statutes advance this interest. *Lungren*, 940 P.2d at 828 (determining that law "would in fact *injure* the asserted interests of the health of minors and the parent-child relationship" (internal quotation marks omitted)); *see also Wicklund v. State*, No. ADV 97-671, 1999 Mont. Dist. LEXIS 1116, at *8–9 (1st Jud. Dist. Feb. 11, 1999) (citing evidence that many adolescents "who did not tell their parents had experienced domestic violence, feared it would occur, or were fearful of being forced to leave home," and that in cases where parental notification was forced, many reported "serious consequences such as physical violence or being forced from the home"); *Planned Parenthood of Cent. N.J. v. Farmer*, 762 A.2d 620, 637 (N.J. 2000) ("Mandated disclosure to a parent 'may . . . cause serious emotional harm to the minor' and 'often precipitates a family crisis, characterized by severe parental anger and rejection of the minor.'").

[13] *See Leiva-Perez*, 640 F.3d at 970 ("[A]lthough petitioners have the ultimate burden of justifying a [stay], the government is obliged to bring circumstances concerning the public interest to the attention of the court. *Nken*'s admonition that we cannot base stay decisions on assumptions and "blithe assertion[s]," [...], applies with equal force to the government's contentions in opposing stay requests.").

pregnancy is the result of rape or incest, or if the young person is subject to parental abuse, enforcement of the parental notification requirement absent a functional judicial bypass process will likely result in actual harm.

Likewise, numerous additional public interests weigh in favor of granting a stay. The preservation of the status quo pending an appeal is sufficient to find that the public interest weighs in favor of the grant of a stay. *See Doe #1*, 957 F.3d at 1068. And, through their admissions and omissions, *see supra* Section II (irreparable harm), the District Attorneys implicitly concede PPMM's argument that there is a public interest in the continuity of access to health care, which will be disrupted if the Rule 60(b) Order goes into effect. *See also Golden Gate*, 512 F.3d at 1125–26 (noting that "[l]ack of timely access to health care poses serious health risks" and that "the general public has an interest in the health of [its] residents"); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) ("[T]he injunction may not be in the public interest if it would likely cause unreasonable delay to a woman's ability to acquire and use the drug, where such delay may render the drug ineffective in preventing an unwanted pregnancy."). The District Attorneys also fail to consider the public interest in protecting the health and wellbeing of young people facing unwanted pregnancy, and ignore the real harms these minors experience when they are denied access to safe and legal abortion. Their interests in avoiding a compelled pregnancy and its consequences are far more compelling than a competing public interest in enforcement of the Rule 60(b) Order. *See* Mot. to Stay 15–18, ECF No. 137. Accordingly, the record overwhelmingly demonstrates that the public interest lies in favor of the grant of a stay including the numerous other general public interests stemming from the harms that young people will experience should this law go into effect. As such, these factors, too, weigh heavily in support of granting PPMM's Motion to Stay.

## IV. The District Attorneys' Administrative Stay Arguments are Unavailing

The District Attorneys' arguments related to the grant of an administrative stay are equally unavailing and suffer from the same errors as their other status quo arguments. Again, the District Attorneys' attempt to supplant the applicable legal standard, invoking all *Nken* factors in spite of

this Circuit having already "definitively resolved which standard applies to administrative stay motions." *Nat'l Urb. League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020) (citing *Doe #1*, 944 F.3d at 1223). "When considering the request for an administrative stay, our touchstone is the need to preserve the status quo." *Nat'l Urb. League*, 977 F.3d at 702; *Ward v. Thompson*, No. CV-22-08015-PCT-DJH, 2022 WL 6181882, at *4 (D. Ariz. Oct. 7, 2022) *see also Am. Fed'n of Gov't Emps., AFL-CIO v. U.S. Office of Pers. Mgmt.*, No. 25-1677, 2025 WL 835337, at *1 (9th Cir. Mar. 17, 2025) (denying an administrative stay where it would disrupt the status quo). In other words, an administrative stay "is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay pending appeal." *Doe #1*, 944 F.3d at 1223. Here, as in *Doe #1*, the "status quo would be disrupted" by allowing enforcement of a statute that has "not yet gone into effect." *Id*. Moreover, their arguments as to "other factors" rely on a misrepresentation of PPMM's request, which sought a temporary administrative stay as an alternative to granting the Motion to Stay, allowing PPMM to seek the resolution of a forthcoming stay motion from the Ninth Circuit, *see* Mot. to Stay 23–34, ECF No. 137. *See* Ninth Circuit Rule 27-2; *see, e.g.*, *Sridej v. Blinken*, No. 2:23-CV-00114-ART-BNW, 2024 WL 307615, at *4 (D. Nev. Jan. 26, 2024) (granting an administrative stay); *Sweet*, 657 F.Supp.3d at 1279 (same). Accordingly, PPMM's arguments in support of an administrative stay remain meaningfully uncontested and have been bolstered by the District Attorneys' admissions that the grant of this request would preserve the *legally relevant* status quo.

## CONCLUSION

As a matter of law and fact, and the unrebutted evidence in the record supporting these arguments, PPMM has demonstrated that the *Nken* factors weigh in favor of the grant of this Court's stay of the Rule 60(b) Order throughout the pendency of the appellate review process and merit the exercise of such discretion.

Dated this 25th day of April, 2025.

**BRAVO SCHRAGER LLP**


By _____*/s/ Bradley Schrager*_____
BRADLEY S. SCHRAGER, ESQ. (SBN 10217)
DANIEL BRAVO, ESQ. (SBN 13078)
6675 South Tenaya Way, Suite 200
Las Vegas, Nevada 89113
Tele.: (702) 996-1724
Email: bradley@bravoschrager.com
Email: daniel@bravoschrager.com

HANNAH SWANSON, ESQ. *(admitted pro hac vice)*
PLANNED PARENTHOOD FEDERATION OF AMERICA
1110 Vermont Ave NW, Suite 300
Washington, DC 20005
Email: hannah.swanson@ppfa.org

VALENTINA De FEX, ESQ. *(admitted pro hac vice)*
PLANNED PARENTHOOD FEDERATION OF AMERICA
123 William Street, Floor 9
New York, NY 10038
Email: valentina.defex@ppfa.org

*Attorneys for Plaintiff,*
*Planned Parenthood Mar Monte, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2025, a true and correct copy of this **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR STAY OF DISTRICT COURT DECISION** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By    *_/s/ Dannielle Fresquez_*
       Dannielle Fresquez, an Employee of
       BRAVO SCHRAGER LLP