1

2                    UNITED STATES DISTRICT COURT

3                         DISTRICT OF NEVADA

4

5   Planned Parenthood Monte Mar, Inc.              Case No. 3:85-cv-00331-ART-CSD

6              Plaintiff,                            ORDER ON PLAINTIFF'S MOTION
          vs.                                        TO STAY DISTRICT COURT
7                                                    DECISION (ECF No. 137)
    Aaron Ford, in his capacity as Nevada
8   Attorney General, *et al.*,

9              Defendants.

10          On March 31, 2025, the Court granted Defendants' motion for relief from

11   judgment and ordered that the injunction against the 1985 law at issue in this

12   case would be lifted on April 30, 2025. (ECF No. 135.) Plaintiff now moves to stay

13   that order pending appeal. (ECF No. 137.) In the alternative, Plaintiff moves for

14   an administrative stay to allow it to seek a stay pending appeal before the Ninth

15   Circuit. (*Id.*)

16          Defendants oppose a stay pending appeal. (ECF No. 142.) For the reasons

17   stated below, the Court DENIES Plaintiff's motion to stay this Court's order

18   pending appeal and GRANTS Plaintiff's alternative motion for a temporary

19   administrative stay.

20   **I.      Background**

21          As the parties are familiar with the factual background of this case, the

22   Court will include here only a brief overview of the relevant history of this case,

23   which is described in full in the Court's order granting Defendants' motion for

24   relief from judgment. (ECF No. 135.)

25          In 1985, the Nevada Legislature passed Senate Bill 510 ("SB 510"), which

26   requires parental notification before a physician can perform an abortion on a

27   minor patent, provides for a judicial bypass and appeal procedure, and imposes

28   criminal penalties. Before the provisions of SB 510 ever went into effect this Court

1 | issued a preliminary injunction enjoining enforcement of the law as

2 | unconstitutional under *Roe v. Wade*, 410 U.S. 113 (1973) and its progeny. *Glick*

3 | *v. McKay*, 616 F. Supp. 322 (D. Nev. 1985). The state appealed, and the Ninth

4 | Circuit affirmed the Court's order. *Glick v. McKay*, 937 F.2d 434 (9th Cir. 1991).

5 | Subsequently, then-Plaintiffs moved for summary judgment, which the Court

6 | granted, permanently enjoining enforcement of the law. (ECF Nos. 74; 75.)

7 | In December of 2023, substituted Defendants moved for relief from

8 | judgment under Rule 60(b), arguing that because the 1991 permanent injunction

9 | was based on the law of *Roe v. Wade*, which was subsequently overturned by

10 | *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), the injunction now

11 | lacked a legal basis. (ECF No. 83.) On March 31, 2025, this Court granted

12 | Defendants' motion for relief and ordered that the enjoined statutory provisions

13 | may go into effect on April 30, 2025. (ECF No. 135.) Plaintiff appealed that order

14 | to the Ninth Circuit and filed the instant motion, requesting that the Court stay

15 | its order while the case is on appeal, or alternatively that the Court grant an

16 | administrative stay while Plaintiff seeks a stay pending appeal from the Ninth

17 | Circuit. (ECF Nos. 136; 137.)

18 | **II.    Jurisdiction and Legal Standard**

19 | Where a party has appealed a district court order that "grants, continues,

20 | modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the

21 | court may suspend, modify, restore, or grant an injunction on terms for bond or

22 | other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). A notice

23 | of appeal generally divests a district court of jurisdiction over the matters

24 | appealed. *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th

25 | Cir. 2001). However, "[t]he district court retains jurisdiction during the pendency

26 | of an appeal to act to preserve the status quo." *Id.* Thus, this Court retains

27 | jurisdiction over Plaintiff's motion to stay the Court's order granting Defendants'

28 | motion for relief pending appeal. Additionally, Federal Rule of Appellate Procedure

1    8(a) requires a party to first move in the district court for a stay of a district court

2    order pending appeal, before making such a request to the court of appeals.

3         Courts consider four factors in deciding whether to grant a request for a

4    stay pending appeal, "(1) whether the stay applicant has made a strong showing

5    that [it] is likely to succeed on the merits; (2) whether the applicant will be

6    irreparably injured absent a stay; (3) whether issuance of the stay will

7    substantially injure the other parties interested in the proceeding; and (4) where

8    the public interest lies." *Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (citation

9    omitted). The first two factors—likelihood of success and irreparable injury—are

10   the most critical, and courts only reach the remaining factors if those two are

11   satisfied. *Sierra Club v. Trump*, 929 F.3d 670, 687 (9th Cir. 2019) (citing *Nken*,

12   556 U.S. at 434). The Ninth Circuit has a "sliding scale" approach to the first

13   factors. *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024). "On one

14   end of the continuum, the proponent must show a 'strong likelihood of success

15   on the merits' and at least 'the possibility of irreparable injury to the [proponent]

16   if preliminary relief is not granted.'" *Id.* (citing *Golden Gate Rest. Ass'n v. City &*

17   *Cnty of San Francisco*, 512 F.3d 1112, 1116–17 (9th Cir. 2008)). On the other end

18   of the continuum, a moving party must show either "a high degree of irreparable

19   injury, or that the balance of equities otherwise tips sharply in their favor." *Id.* at

20   983 (cleaned up).

21   **III.    Analysis**

22        **A. Likelihood of Success**

23        In order to succeed on this factor, Plaintiff must show at least that "serious

24   questions" are raised as to the merits of their claim. *Mi Familia Vota*, 111 F.4th

25   at 981. Courts have rearticulated this factor as requiring a "reasonable

26   probability" of success, a "fair prospect" of success, the existence of "a substantial

27   case on the merits," or a showing that "serious legal questions" have been raised.

28   *Leiva-Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011). However, "[a] serious

1  question is more than 'a merely plausible claim,' and a court cannot 'forgo legal

2  analysis just because it has not identified precedent that places the question

3  beyond debate.'" *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023) (quoting

4  *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 863 (9th Cir.

5  2022)).

6  **B. Plaintiff Has Not Shown Serious Questions Going to the Merits**

7  Plaintiff argues that it can demonstrate serious questions on the merits

8  exist as to a central issue in this case: if "in determining whether to grant Rule

9  60(b)(5) relief, this Court could consider equitable factors and evaluate whether

10 the proposed modification and vacatur of the 1991 *Glick* permanent injunction

11 would result in independent constitutional violations." (ECF No. 137 at 10.)

12  **1. *Becerra* Clearly Held That Consideration of Equitable Factors Does**
13  **Not Apply in These Circumstances**

14 Plaintiff first argues that there are serious questions as to whether in

15 determining whether to grant Rule 60(b) relief, the Court should have considered

16 equitable factors. The Court disagrees and finds that Plaintiff does not raise a

17 serious question.

18 Plaintiff argues, as they did in their briefing on Defendants' motion for

19 relief, that under *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992)),

20 *America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021), and *Bellevue*

21 *Manor Associates. v. United States*, 165 F.3d 1249 (9th Cir. 1999)), a court must

22 consider equitable factors in deciding whether to grant relief from judgment.

23 These equitable factors include whether the changed circumstances make

24 compliance with the judgment more onerous, unworkable, or detrimental to the

25 public interest. *Rousseau*, 985 F.3d at 1097–98. However, this argument was

26 explicitly rejected in this same context by the Ninth Circuit in *California by and*

27 *through Becerra v. EPA*, 978 F.3d 708 (9th Cir. 2020). The court in *Becerra* held

28 that "when a district court reviews an injunction based solely on law that has

4

1 since been altered to permit what was previously forbidden, it is an abuse of

2 discretion to refuse to modify the injunction in the light of the changed law." *Id.*

3 at 718–19. The court in *Becerra* also explicitly rejected the argument that a court

4 should consider equitable factors in deciding a motion for relief in this context.

5 *Id.* at 715–16.

6    Additionally, Plaintiff's argument that the decision in *Warren v. City of*

7 *Chico*, No. 2:21-CV-00640-DAD-DMC, 2025 WL 974068 (E.D. Cal. Mar. 31, 2025)

8 creates a serious question is without merit. Plaintiff argues that *Warren* shows

9 that another court in this circuit applied equitable factors in evaluating a motion

10 for relief due to a change in law, as opposed to a change in facts. However, *Warren*

11 involved a motion for relief from a settlement agreement, not a prospective

12 injunction. *Id.* at *1. As such, the court evaluated the motion for relief under the

13 standard used for consent decrees, which requires analysis of equitable factors.

14 *Id.* at *5; *see Becerra*, 978 F.3d at 716 (explaining that the court in *Rufo*

15 considered equitable factors because it involved a consent decree and

16 distinguishing that from cases involving relief from prospective injunctions).

17 Thus, the holding in *Warren* that consideration of equitable factors is appropriate

18 in the context of evaluating a request for relief from a consent decree is consistent

19 with *Becerra. Becerra* made clear that consideration of equitable factors may be

20 appropriate when either 1) relief is sought from a prospective injunction due to a

21 change in factual circumstances; or 2) relief is sought from a consent decree. *Id.*

22 at 716, 716 n.5. But *Becerra* was also clear that equitable factors are not

23 considered in the context of a prospective injunction whose legal basis has

24 evaporated. *Id.* at 715–16.

25    Finally, Plaintiff briefly argues that the decisions in *Planned Parenthood*

26 *Federation of America, Inc. v. Center for Medical Progress*, 704 F. Supp. 3d 1027

27 (N.D. Cal. 2023) and *National Abortion Federation v. Center for Medical Progress*,

28 No. 15-CV-03522-WHO, 2024 WL 1286936 (N.D. Cal. Mar. 25, 2024) show that

1   other district courts in this circuit cited to the test from *Rousseau* in analyzing

2   motions for relief based on a change in law. Both cases cited *Rousseau* for the

3   following rule statement, "If the moving party cites significantly changed

4   circumstances, it must also show that the changed conditions make compliance

5   with the consent decree more onerous, unworkable, or detrimental to the public

6   interest." *Planned Parenthood*, 704 F. Supp. 3d at 1035; *Nat'l Abortion Fed'n*,

7   2024 WL 1286936, at *3 (both citing *Rousseau*, 985 F.3d at 1097–98). However,

8   neither court went on to apply this standard because both courts found no

9   change in law had occurred. *Planned Parenthood*, 704 F. Supp. 3d at 1036–37;

10  *Nat'l Abortion Fed'n*, 2024 WL 1286936, at *3–4. The fact that these courts

11  included this sentence in the rule statement, without applying equitable factors

12  to a situation where a change in law eliminates the basis for an injunction, is

13  insufficient to raise a "serious question," in light of the Ninth Circuit's clear

14  holding in *Becerra*.

15
16
### 2. Plaintiff's Alternative Constitutional Bases Were Not Presented as Arguments for Injunctive Relief

17  Plaintiff next argues that there is a serious question as to whether the

18  Court should have "evaluat[ed] whether the proposed modification and vacatur

19  of the 1991 *Glick* permanent injunction would result in independent

20  constitutional violations." (ECF No. 137 at 10.) Plaintiff argues that while *Becerra*

21  does bar courts from maintaining injunctions solely based on equitable factors,

22  "it does not expressly require abandoning or disregarding *Rufo*'s inquiry into

23  whether the existence of independent legal grounds counsel against the

24  modification of an injunction." (*Id.* at 12.)

25  The Court held that while a court *can* consider alternative bases for a

26  preliminary injunction at the same time as granting relief from an injunction, it

27  could not do so here because the alternative constitutional bases were presented

28  as equitable factors and not as independent grounds for injunctive relief. The

1 Court's order stated:

> The Court finds that while there may be alternative
> grounds to enjoin the statutory provisions at issue, the
> question of whether an injunction on one of these
> grounds is warranted is not properly before the Court
> . . .
> If Plaintiff can show that it is entitled to a preliminary
> injunction on an alternative basis, the Court should
> issue a preliminary injunction on this basis at the same
> time as it lifts the permanent injunction on the now-
> overruled basis. Because Plaintiff has not moved for a
> preliminary injunction, however, the record before the
> Court does not support such relief.

(ECF No. 135 at 25, 26.) At no point in its briefing did Plaintiff argue that its

alternative constitutional bases warranted injunctive relief under the applicable

preliminary or permanent injunction factors. The Court therefore found that the

merits of these arguments were not properly before it because they had not been

argued under the appropriate standards for injunctive relief. The Court does not

find that there is a serious question as to whether it could have maintained the

1991 injunction or separately enjoined the law on one of these alternative bases.

To do so would have been to continue and/or implement an injunction without

briefing or analysis of the applicable standard for injunctive relief.[1]

## C. Irreparable Injury

Plaintiff argues that absent a stay, Planned Parenthood Monte Mar, its

minor patients, and its providers will suffer irreparable harm because of the

"sudden and standardless enforcement of Nevada's parental notification and

judicial bypass provisions." (ECF No. 137 at 13.) Plaintiff argues that because the

parental notification and judicial bypass provisions are vague, providers will be

"vulnerable to arbitrary and inconsistent enforcement and imposition of criminal

---

[1] The Court understands that Plaintiff could not formally move for a preliminary
injunction on one of the alternative bases at that time. However, the Court notes
that now that the Court has granted Defendants' motion for relief, the threat of
enforcement is a live issue and Plaintiff could now file such a motion.

penalties." (*Id.* at 13.) Plaintiff further argues that because the judicial bypass procedure set forth by the provisions of SB 510 is not adequately described by the statute, obtaining a judicial bypass is "inaccessible and remain[s] so until further legislative and judicial steps are taken." (*Id.* at 14.) These barriers, they argue, may result in delayed access or the inability to access an abortion for young people, as obtaining an abortion is time-sensitive (abortion is legal in Nevada only through the twenty-fourth week of pregnancy).

While the Court finds these arguments regarding irreparable injury persuasive, it declines to reach them because Plaintiff has not shown "serious legal questions" going to the merits. "Even with a high degree of irreparable injury, the movant must show serious legal questions going to the merits." *Manrique*, 65 F.4th at 1041 (denying stay pending appeal where high degree of irreparable harm was shown but movant failed to raise at least serious questions going to the merits) (internal citation omitted); s*ee also Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020) ("Whether the [movant] has failed to show any irreparable harm during the pendency of the appeal or has made only a minimal showing, it has not carried its burden to establish a sufficient likelihood of success on the merits.").

Because the Court finds that Plaintiff has not raised "serious questions" as to the merits of their argument, the Court denies Plaintiff's motion for a stay pending appeal. *See Manrique*, 65 F.4th at 1041 (denying stay despite high degree of irreparable harm because movant failed to raise at least serious questions). And because the Court finds that Plaintiff has not satisfied both of the first two *Nken* factors, likelihood of success on the merits and irreparable harm, the Court does not evaluate the remaining factors, injury to other parties and public interest. *See Sierra Club*, 929 F.3d at 687.[2]

---

[2] The Court's determination that Plaintiff has failed to raise serious questions

1    **IV.    Alternative Motion for a Temporary Administrative Stay**

2          In the alternative, Plaintiff moves for a temporary administrative stay of the

3    Court's order vacating the permanent injunction while it seeks a stay pending

4    appeal from the Ninth Circuit. An administrative stay "is only intended to

5    preserve the status quo until the substantive motion for a stay pending appeal

6    can be considered on the merits and does not constitute in any way a decision as

7    to the merits of the motion for stay pending appeal." *Am. Fed'n of Gov't Emps.,*

8    *AFL-CIO v. U.S. Off. of Pers. Mgmt.*, No. 25-1677, 2025 WL 835337, at \*1 (9th Cir.

9    Mar. 17, 2025) (quoting *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019)).

10   Because the standard for a temporary administrative stay differs greatly from the

11   standard for a stay pending appeal, a court can grant a temporary administrative

12   stay where a stay pending appeal is denied. *See Sweet v. Cardona*, 657 F. Supp.

13   3d 1260, 1279–80 (N.D. Cal. 2023) (denying stay pending appeal but granting

14   temporary administrative appeal); *Oracle Int'l Corp. v. Rimini St., Inc.*, No. 2:14-

15   CV-01699-MMD-DJA, 2023 WL 5221947, at \*4 (D. Nev. Aug. 15, 2023) (same);

16   *Sridej v. Blinken*, No. 2:23-CV-00114-ART-BNW, 2024 WL 307615, at \*4 (D. Nev.

17   Jan. 26, 2024), *aff'd*, 108 F.4th 1088 (9th Cir. 2024) (same).

18         The parties dispute what the "status quo" means in this case. Defendants

19   argue that the status quo means the state of affairs before the Court issued the

20   original 1985 preliminary injunction enjoining enforcement of the provisions at

21   issue. Defendants thus urge that preserving the status quo would mean

22   permitting the statutory provisions to go into effect, as they would have in 1985

23   absent a preliminary injunction. Plaintiff counters that 1985 is not the correct

24   benchmark for assessing the this is the status quo, especially since SB 510 has

25   _____

26   applies only to the arguments above concerning consideration of equitable factors
     and whether Plaintiff's alternative constitutional bases for the injunction were
27   properly before the Court. The Court takes no position on the merits of Plaintiff's
     alternative arguments that SB 510 is unconstitutional.
28

9

1   been enjoined for nearly 40 years. Plaintiff asserts that the status quo is the state

2   of affairs prior to the *challenged* judicial intervention, that is, before the Court's

3   order lifting the injunction.

4           The Supreme Court recently opined in a memorandum opinion regarding

5   administrative stays that the "status quo" is "a tricky metric, because there is no

6   settled way of defining 'the status quo.'" *United States v. Texas*, 144 S. Ct. 797,

7   798 n.2 (2024). The Court did not resolve the answer to that question, but noted

8   that courts have answered it differently, with some defining the status quo as the

9   state of affairs prior to the challenged law or rule, and others defining the status

10  quo as the state of affairs prior to judicial intervention. *Id.*; *see also* Rachel

11  Bayefsky, Administrative Stays: Power and Procedure, 97 Notre Dame L. Rev.

12  1941, 1948 (2022) (noting that "[c]ourts have wrestled, however, with what

13  counts as the 'status quo'").

14          This case is in an unusual posture. In many of the cases regarding stays

15  pending appeal, courts evaluate a situation in which the government took or

16  planned to take some action, that action was enjoined by a district court, and the

17  government appealed that injunction. *See AFL-CIO*, 2025 WL 835337, at *1

18  (executive agency action terminated probationary federal workers, injunction

19  required reinstatement, and injunction was appealed; stay was denied because

20  reinstatement order preserved status quo); *Nat'l Urb. League v. Ross*, 977 F.3d

21  698, 701 (9th Cir. 2020) (agency action dramatically advanced census deadlines,

22  injunction enjoined those advanced deadlines, and injunction was appealed; stay

23  was denied because injunction prohibiting new deadlines preserved status quo);

24  *Doe #1*, 944 F.3d at 1223 (presidential proclamation would have changed

25  immigration policy, injunction enjoined the proclamation from taking effect,

26  injunction was appealed; stay was denied because injunction maintained status

27  quo of unchanged immigration policy). In all of those cases, courts denied an

28  administrative stay of the lower court's injunction because that injunction

1   preserved the status quo—which was the state of affairs before the challenged

2   government action.

3        Here, however, it is the *vacatur* of an earlier injunction that has been

4   appealed. SB 510 created a new parental consent requirement, the 1985 and

5   1991 injunctions enjoined that requirement, and the Court's recent order then

6   vacated that injunction. The 1985 and 1991 injunctions had the same effect as

7   the injunctions in the above cases because they preserved the status quo—the

8   state of affairs before the enactment of SB 510—by enjoining its enforcement. The

9   Court's recent order vacating the injunction thus *disrupts* this status quo.

10  Accordingly, the Court finds that a temporary administrative stay of the order

11  vacating the injunction would preserve the status quo.

12       As a practical matter, a temporary administrative stay is justified to

13  preserve the status quo. The Court notes that given that the statutory provisions

14  which are now enjoined will be lifted on April 30, 2025—approximately five days

15  from the date of this order—Plaintiff will not realistically get an answer on any

16  request for a stay from the Ninth Circuit until after that date has passed. This

17  could create a situation in which the provisions at issue are enjoined, un-

18  enjoined, and then re-enjoined all in a matter of days or weeks, potentially leading

19  to confusion which could affect minor patients and doctors subject to the

20  provisions as well as law enforcement charged with enforcing the provisions. *See*

21  *Oracle Int'l Corp.*, 2023 WL 5221947, at *5 (denying stay pending appeal but

22  granting administrative stay where defendant would not get an answer to its stay

23  request until after its deadline for compliance with the court's order).

24       The Court therefore GRANTS Plaintiff's alternative motion for a temporary

25  administrative stay while it seeks a stay pending appeal from the Ninth Circuit.

26  **V.    Conclusion**

27       It is therefore ordered that Plaintiff's motion for a stay pending appeal or

28  alternatively a temporary administrative stay (ECF No. 137) is GRANTED IN PART

1  AND DENIED IN PART.

2      Plaintiff's motion for a stay of this court's order pending appeal is DENIED.

3      Plaintiff's motion for a temporary administrative stay of this court's order

4  while it seeks a stay pending appeal from the Ninth Circuit is GRANTED.

5      This Court's previous order vacating the injunction against enforcement of

6  NRS 442.255, 442.25555, and 442.257 (ECF No. 135) is temporarily STAYED

7  until the United States Court of Appeals for the Ninth Circuit resolves the motion

8  for a stay pending appeal that Plaintiff states it intends to file with the Ninth

9  Circuit under Federal Rule of Appellate Procedure 8(a)(2). Plaintiff must file such

10  a motion with the Ninth Circuit within seven days of this order.[3]

11      It is further ordered that Plaintiff must file a notice with the Court of the

12  ultimate disposition of Plaintiff's motion to stay within five days of the Ninth

13  Circuit's order on that motion. If that motion is denied, the Court will issue an

14  order lifting the stay of its prior order.

15      If Plaintiff fails to file a motion for stay pending appeal with the Ninth

16  Circuit, the temporary stay shall expire seven days after the entry of this order.

17  Plaintiff is ordered to file a notice with the Court regarding whether it has moved

18  for a stay with the Ninth Circuit no later than seven days from the date of this

19  order.

20      Dated this 25th day of April 2025.

21

22

23                              _____
                                ANNE R. TRAUM
24                              UNITED STATES DISTRICT JUDGE

25  _____

26  [3] Ninth Circuit Rule 27-2 states: If a district court stays an order or judgment to
    permit application to the Court of Appeals for a stay pending appeal, an
27  application for such stay shall be filed in the Court of Appeals within 7 days after
    issuance of the district court's stay. 9th Cir. R. 27-2 (motions for stays pending
28  appeal).